Original
No. 82-378

PETITION OF NEW HAMPSHIRE BAR ASSOCIATION
AND NEW HAMPSHIRE BAR FOUNDATION

November 24, 1982

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* on the brief and orally), for the New Hampshire Bar Association and the New Hampshire Bar Foundation.

*Richard E. Galway*, of Manchester, orally, for the New Hampshire Bar Association, as president.

*Bruce E. Friedman*, of Concord, orally, for the Family and Housing Law Clinic, Franklin Pierce Law Center.

PER CURIAM. This original petition by the New Hampshire Bar Association and the New Hampshire Bar Foundation seeks approval by this court of an amendment to the supreme court rules to permit attorneys to participate voluntarily in an interest-bearing-trust-account program to aid certain activities providing legal services to the poor.

I. *History of the interest-bearing-trust-account program.*

The concept of the interest-bearing-trust-account program in the United States apparently began in Florida in 1971 as a result of an investigation into means to provide funds for the improvement of the administration of justice. The Board of Governors of the Florida Bar, with the concurrence of the Board of Directors of the Florida Bar Foundation, petitioned the Florida Supreme Court, which

approved the interest-bearing-trust-account proposal in 1978. *In re Interest on Trust Accounts*, 356 So. 2d 799 (Fla. 1978).

The Florida action followed the lead of other countries. In approximately twenty jurisdictions in at least five countries, interest earned on attorneys' trust accounts is used to support activities which benefit the public. These jurisdictions include ten Canadian Provinces and the Yukon and Northwest Territories, the Republic of South Africa, Namibia, Zimbabwe, and five States in Australia. *See* Gonser, Almond & Ziegler, *Financing Public Services Activities with Interest Bearing Attorney Trust Accounts*, 15 IDAHO L. REV. 219, 221 (1979).

In 1978, however, significant obstacles remained for the implementation of the interest-bearing-trust-account program in Florida. First and foremost was the Internal Revenue Service. The primary obstacle was the so-called "assignment-of-interest doctrine", which prohibits a taxpayer from attempting to avoid adverse tax consequences by transferring income to another taxpayer. As a result of efforts of tax counsel retained by the Florida Bar, the Internal Revenue Service in 1981 issued Revenue Ruling 81-209, 1981-2 C.B. 16, which held that the assignment-of-interest doctrine would not pertain "so long as clients could in no way and to no degree control the creation or destiny of earnings generated on their attorney-held funds." *Matter of Interest on Trust Accounts*, 402 So. 2d 389, 391 (Fla. 1981).

The second obstacle faced by the Florida program was the federal banking law, because interest-bearing checking accounts were not permitted on a nationwide basis. Congress enacted the Monetary Control Act of 1980, Pub. L. No. 96–221, § 303, 94 Stat. 132, 146, which authorized interest-bearing Negotiable Order of Withdrawal (NOW) checking accounts. The Federal Reserve Board subsequently approved the use of NOW accounts. The Florida Bar obtained a letter from the General Counsel of the Federal Reserve Board approving the proposed use of NOW accounts for the interest-bearing-trust-account program. *See* Middlebrooks, *The Interest on Trust Accounts Program—Mechanics of Its Operation*, 56 FLA. B.J. 115, 117 (1982). In February 1979, the Conference of Chief Justices of the fifty State courts adopted a resolution endorsing the Florida program and recommending its adoption in other States.

In anticipation of Revenue Ruling 81-209, the Florida Supreme Court approved a voluntary interest-bearing-trust-account program by court rule. The history of the program in Florida has been chronicled in four decisions of that State's supreme court. *See Matter of Interest on Trust Accounts*, 402 So. 2d 389 (Fla. 1981); *Matter of Interest on Trust Accounts*, 396 So. 2d 719 (Fla. 1981);

*Matter of Interest on Trust Accounts*, 372 So. 2d 67 (Fla. 1979); *In re Interest on Trust Accounts*, 356 So. 2d 799 (Fla. 1978). California, Colorado, Idaho, and Maryland have also adopted interest-bearing-trust-account programs.

II. *The New Hampshire Bar proposal.*

The petition filed by the Bar Association and the Bar Foundation, including the proposed amendment to Supreme Court Rule 37, calls for a voluntary program for New Hampshire lawyers with respect to so-called commingled or pooled trust deposits, which are currently on deposit in non-interest-bearing accounts. The specific features of the proposal are as follows:

1. The proposal provides that only interest from fund deposits so short in duration or so small in amount that the interest on a single client's deposit cannot, as a practical matter, be credited to the client, would be used for legal service programs. The proposal does not alter the long-standing trust-accounting principle that lawyers have a fiduciary obligation to place funds in an interest-bearing account and to credit the interest to the client when it is practical to do so.

2. The program does not deprive clients of interest on their trust funds. The present practice of retaining such commingled funds in non-interest-bearing accounts generates no income for the clients and benefits only the banking institutions in which the deposits are maintained.

3. The program does not affect the rule prohibiting the use of trust-account funds or earnings by an attorney or law firm. N.H. Sup. Ct. R. 37(7).

4. The present program concerns only those accounts involving clients' funds where the administrative cost and resulting tax liability make it impractical to place the clients' funds in an interest-bearing account.

5. The program is voluntary and does not impose new or additional administrative burdens. The duty to place clients' funds in a trust account for short-term and nominal deposits is unaffected, and the attorney will still maintain an account segregated from his own funds. *See* N.H. Sup. Ct. R. 37(7). The only change is that attorneys participating in the program will now place that account at interest.

6. The financial institutions which have the interest-bearing accounts, not the attorneys, will transmit interest and furnish quarterly reports to the Bar Foundation.

7. Under the program, attorneys are not required to notify clients that their funds are being deposited in such an account because

clients' approval regarding participation is unnecessary. There is no impropriety in an attorney advising clients of his willingness to advance the cause of the administration of justice in New Hampshire by participating in the program.

The Internal Revenue Service stated in Revenue Ruling 81-209 that interest earned on nominal *and* short-term trust accounts which is paid over to a Bar Foundation, pursuant to a court-established interest-bearing-trust-account program, is not computed in the gross income of the client. 1981-2 C.B. at 17. Similarly, in view of the fact that interest will be paid over to the Bar Foundation to use for charitable purposes, there should be no federal income tax consequences for any entity or person. I.R.C. § 501(c) (3).

The funds will be disbursed by the Bar Foundation solely for the support of legal services to the disadvantaged, for public education relating to the courts and legal matters, and for such other programs as may be approved by this court, provided that such income shall be applied only to activities permitted to be conducted by organizations exempt from taxation under Internal Revenue Code section 501(c)(3). The exact determination of the appropriations of these funds will be made by the board of directors of the Bar Foundation based upon recommendations of the grants committee, which will consist of attorneys appointed by the Bar Association who are participating in the program.

III. *Constitutional implications.*

██ It is well settled that a State cannot take private property without affording the owner the constitutional protection of procedural due process. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 318–19 (1950). The question may arise as to whether participation in this program conflicts with this constitutional guarantee, as clients may appear to be denied the right to earn interest for their own benefit from their small, short-term trust accounts. In order to assert the constitutional claim that the program constitutes a "taking" of client property in violation of the fifth and fourteenth amendments to the United States Constitution and part one, article twelve of the New Hampshire Constitution, a client would have to show that he possessed a specific property interest and that he, in fact, had been unjustly deprived of that property interest. *See Sniadach v. Family Finance Corp.*, 395 U.S. 337, 339 (1969); *Metzger v. Town of Brentwood*, 117 N.H. 497, 502–03, 374 A.2d 954, 957–58 (1977).

The Florida Supreme Court, for its part, resolved these issues by analyzing the proposed trust account program in light of a recent United States Supreme Court opinion on the "taking" clause of the

fifth amendment. *See Matter of Interest on Trust Accounts*, 402 So. 2d at 393–96. In *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), a unanimous Court held unconstitutional a Florida statute which mandated that all interest earned on interpleader funds, required to be deposited in the registry of circuit courts, be deemed property of the State rather than that of the owners of the funds.

■ In its analysis of *Webb's*, the Florida Supreme Court pointed to several major factors which distinguished the proposed trust account program from the facts of the *Webb's* case. The Florida court observed that the most relevant distinction was that in the trust account program, unlike the *Webb's* case, no client would be unjustly deprived by the State of any property right. Inasmuch as the proposed trust account program created a source of income that, as a practical matter, would not have been available for return to clients nor would otherwise exist, the Florida court concluded that the income generated could not fairly be classified as client "property." 402 So. 2d at 395–96. We agree with the Florida court's analysis and find no constitutional impediment to the interest-bearing-trust-account proposal.

IV. *Ethical considerations.*

■ The ethical considerations regarding interest-bearing-trust accounts are contained in Canon 9 of the Code of Professional Responsibility. The basic principle derived from Canon 9 is that an attorney cannot profit from his client's funds. *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 991 (1967); *id.*, Informal Op. 545 (1962). Basic principles of the law of agency and trusts seem to compel the conclusion that at some point it would be irresponsible for an attorney not to deposit a client's funds in an interest-bearing trust account, and pay such interest to the client. An attorney who fails to do so may be found to have violated the fiduciary duty owed to his client. *See* 2 A. SCOTT, THE LAW OF TRUSTS §§ 180.3, 181, at 1457, 1463 (3d ed. 1967 & Supp. 1981).

In many cases, however, the amounts that are held are so small, or they are held for such a short period of time, that it is impractical to place them at interest. *Id.*, at 1464. Such funds historically have properly been placed in non-interest-bearing accounts, separate from the attorney's own funds.

The present proposal involves only those funds which are not currently earning interest, and thus the clients lose nothing by the proposal.

■ The above principles, coupled with the interest of many bar associations in finding alternative funding for public-service activities, led the Ethics and Professional Responsibility Committee of the American Bar Association to render Formal Opinion 348 on July 23, 1982. That opinion concludes that participation in an interest-bearing-trust-account program authorized by the State, with attributes similar to those contained in the currently proposed rule, is ethical. *See* 68 A.B.A.J. 1502, 1506 (1982).

Accordingly, this court hereby approves and promulgates the following new rule as proposed by the New Hampshire Bar Association, effective January 1, 1983:

*Rule 50. Trust Accounts*

(1) Interest-Bearing Trust Accounts. A member of the New Hampshire Bar who elects to create or maintain an interest-bearing trust account for clients' funds which are nominal in amount or to be held for a short period of time shall comply with the following provisions:

(a) An interest-bearing trust account may be established with any bank or savings and loan association authorized by federal or State law to do business in New Hampshire and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation. Funds in each interest-bearing trust account shall be subject to withdrawal upon demand.

(b) The rate of interest payable on any interest-bearing trust account shall be the same rate of interest paid by the depository institution for all other holders of similar accounts. Interest rates higher than those offered by the institution on regular checking or savings accounts may be obtained by a lawyer or law firm on some or all of deposited funds so long as there is no impairment of the right to withdraw or transfer principal immediately.

(c) Lawyers or law firms electing to deposit client funds in an interest-bearing account shall direct the depository institution:

(i) to remit interest or dividends, as the case may be, at least quarterly, to the New Hampshire Bar Foundation; and

(ii) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent; and

(iii) to transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the Foundation.

(d) The interest or dividends received by the Foundation shall be used solely by the Foundation for the following purposes:

(i) for the support of legal services to the disadvantaged;

978

 (ii) for public education relating to the courts and legal matters;

 (iii) for such other programs as may be approved by the supreme court.

Such income shall be applied only to activities permitted to be conducted by organizations exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1954, as from time to time amended.

 (e) This rule may be subsequently amended to effectuate its purposes or to comply with any amendments to the Internal Revenue Code.

 (2) Present Rule 37 (7) is renumbered as 50 (2).

*So ordered.*