PETITION BY THE MASSACHUSETTS BAR ASSOCIATION AND THE BOSTON BAR ASSOCIATION.

May 23, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Taking of property. *Due Process of Law*, Taking of property. *Interest. Fiduciary. Trust*, Bank account. *Attorney at Law*, Canons of ethics, Fiduciary duty.

A rule of this court establishing a voluntary program for lawyers, by which a participating lawyer's nominal or short-term trust deposits would be pooled in an interest-bearing trust account, the interest on which would be remitted to charitable entities for use in improving the administration of justice or delivering legal services to needy persons, would neither work a taking of clients' property without due process of law nor contravene relevant ethical considerations. [5-9]

PETITION filed in the Supreme Judicial Court for the Commonwealth on June 26, 1984.

The matter was considered on briefs.

*Richard G. Hoffman & Edward J. Smith* for Massachusetts Bar Association.

*William F. Looney, Jr., Katherine S. McHugh and John H. Mason* for Boston Bar Association & another.

*Patricia A. Pap* for Legal Services for Cape Cod and Islands, Inc., amicus curiae.

2                                                        395 Mass. 1

Petition by the Massachusetts Bar Association & the Boston Bar Association.

*Allan G. Rodgers* for Massachusetts Law Reform Institute, amicus curiae.

*Kenneth D. Lipman & Michael E. Alexander* for Southeastern Massachusetts Legal Assistance Corporation, amicus curiae.

*Patricia A. Bobba* for Women's Bar Association of Massachusetts, amicus curiae.

*Lonnie A. Powers & Bart J. Gordon* for Massachusetts Legal Assistance Corporation, amicus curiae.

*Daniel L. Siegel* for Merrimack Valley Legal Services, Inc., amicus curiae.

*Raymond J. Kenney, Jr., Roy A. Hammer & Malcolm L. Davidson* for Massachusetts Bar Foundation, Inc., amicus curiae.

*Allan G. Rodgers* for various legal services programs, amici curiae, submitted a memorandum.

BY THE COURT. In June, 1984, the Massachusetts Bar Association (MBA) and the Boston Bar Association (BBA)[1] petitioned this court to establish an Interest on Lawyers' Trust Accounts (IOLTA) program through an amendment to Canon 9, DR 9-102 of Rule 3:07 of the Rules of the Supreme Judicial Court.[2] See Appendix, *infra*. The petitioners further requested

---

[1] On December 12, 1984, the MBA and BBA moved to amend their petition to add the Massachusetts Legal Assistance Corporation as an additional petitioner.

[2] The petition proposed an amendment that would add the following new paragraph (C) to DR 9-102:

"(C) A lawyer may elect to create, maintain, and at any time to close an interest-bearing trust account (hereinafter 'trust account') for clients' funds which in the judgment of the lawyer are nominal in amount, or are to be held for a short period of time, in compliance with the following provisions:

"(1) The trust account may be established with any bank or savings and loan association authorized by federal or state law to do business in Massachusetts and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or similar state insurance programs for state-chartered institutions. Funds in the trust account shall be subject to withdrawal upon request and without delay.

the court to appoint an Implementation Committee to oversee the development and execution of an IOLTA plan, if authorized, and to designate the organization or organizations eligible to receive funds generated by any such plan.

On July 2, 1984, we issued an announcement inviting interested persons or organizations to submit briefs relative to the petition. The briefs received were unanimous in their commendation to the court of the proposed amendment.[3] In view of the experience of other jurisdictions with the IOLTA program, the absence of significant constitutional or ethical objections, the voluntary nature of the proposed plan, and the worthy aims of the program, we grant the petition.

We briefly review the history of the IOLTA movement. "Attorneys have been entrusted with clients' funds and property since the early part of the development of our common law system of jurisprudence. Trust soon led to abuses and abuses of trust led to regulations." England & Carlisle, History of Interest on Trust Accounts Program, 56 Fla. B. J. 101, 101

---

"(2) Lawyers or law firms electing to deposit client funds in the trust account shall direct the depository institution:

"(a) To remit interest or dividends, net of any service charges or fees, on the average monthly balance in the account, or as otherwise computed in accordance with an institution's standard accounting practice, at least quarterly, to such one or more tax-exempt recipient disburser entity (hereinafter 'charitable entity') designated by the Supreme Judicial Court, for use in (1) improving the administration of justice or (2) delivering civil legal services to those who cannot afford them.

"(b) To transmit with each remittance to the charitable entity a statement showing the name of the lawyer or law firm which deposited the funds; and

"(c) At the same time to transmit to the depositing lawyer or law firm with a copy to the IOLTA Implementation Committee or its designee, a report showing the amount paid to the charitable entity, the rate of interest applied, and the average account balance for the period for which the report is made."

[3] We appreciate the amicus briefs we received from Legal Services for Cape Cod and Islands, Inc., the Massachusetts Law Reform Institute, Southeastern Massachusetts Legal Assistance Corporation, the Women's Bar Association of Massachusetts, the Massachusetts Legal Assistance Corporation, Merrimack Valley Legal Services, Inc., the Massachusetts Bar Foundation, Inc., as well as the joint submission of the legal services programs in Massachusetts.

(1982). The rules regulating trust accounts appear at S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 382 Mass. 795 (1981). Historically, client funds small in amount "have been commingled and placed in noninterest-bearing accounts held in trust for individual clients." Special Project, Interest on Lawyers' Trust Accounts: A Proposal for Wisconsin, 66 Marquette L. Rev. 835, 835 (1983). When individual sums of clients' money were capable of generating significant amounts of money, they were "often deposited by lawyers in interest bearing savings accounts with the interest earned thereon, less the costs of maintaining the account, paid over directly to the client or credited to the client's account." *Petition of Minn. State Bar Ass'n*, 332 N.W.2d 151, 156 (Minn. 1982).

In the 1960's, the bars of several Australian States and Canadian provinces, seeking sources of funding for expanding bar activities, established IOLTA programs to support legal aid, law libraries, law school scholarships, and other projects for the improvement of the administration of justice. England & Carlisle, *supra* at 102. With the advent of the negotiable order of withdrawal (NOW) account, these programs "demonstrated the logic of capturing interest which [could not] economically or practically be identified or paid to specific clients and allowing the interest to be used for various law-related, public purposes." *Petition of Minn. State Bar Ass'n, supra* at 156.

The IOLTA concept began in the United States in Florida in 1971, "as a result of an investigation into means to provide funds for the improvement of the administration of justice." *Petition of N.H. Bar Ass'n*, 122 N.H. 971, 972 (1982). In 1978, the Florida Supreme Court approved a voluntary interest-bearing-trust-account program by court rule, on petition from the Board of Governors of the Florida Bar, with the concurrence of the Board of Directors of the Florida Bar Foundation. *Matter of Interest on Trust Accounts*, 402 So. 2d 389 (Fla. 1981). Within two years of its implementation, the Florida program raised one million dollars of which more than half was distributed for legal assistance to the poor, legal scholarships, and projects designed to improve the administration of justice. See Krasno, IOLTA Programs Gaining Momentum, 67 Judicature

49 (1983). Enthusiasm for the concept spread rapidly, see Rivlin, I.O.L.T.A. Gains Momentum Nationwide, 69 A.B.A.J. 1036 (1983), with the result that by the time of the petition of the MBA and BBA, twenty-two States,[4] including the neighboring States of New York, Vermont, and New Hampshire, had adopted IOLTA programs, with local modifications.

The petition filed by the MBA and BBA, including the proposed amendment to S.J.C. Rule 3:07, calls for a voluntary program for Massachusetts lawyers with respect to pooled trust deposits which are currently held in noninterest-bearing accounts. We point out several salient features of the proposal: (1) The determination whether a client's funds are nominal in amount or to be held for a short period of time rests in the sound judgment of each participating attorney; (2) the qualified recipient charitable entities are to be designated by this court; (3) the qualified recipient entities shall allocate net income from the IOLTA program for use in improving the administration of justice or delivering civil legal services to the poor; and (4) lawyers must direct the depository institution to pay interest or dividends, net of any service charges or fees, to the designated charitable entities, and to send certain regular reports to the entities and to the depositing lawyer or law firm.

Having considered the possible impediments to implementation of an IOLTA program, we conclude, as have the highest courts of other States, that the program is constitutionally and ethically permissible. See, e.g., *Matter of Interest on Lawyers' Trust Accounts*, 283 Ark. 252 (1984); *Matter of Interest on Trust Accounts*, 402 So. 2d 389 (Fla. 1981); *Petition of Minn. State Bar Ass'n*, 332 N.W.2d 151 (Minn. 1982); *Petition of N.H. Bar Ass'n*, 122 N.H. 971 (1982); *Matter of Interest on Lawyers' Trust Accounts*, 672 P.2d 406 (Utah 1983); *Matter of the Adoption of Amendments to CPR DR 9-102 IOLTA*, 102 Wash. 2d 1101 (1984).

The major question to be addressed with respect to the IOLTA concept is whether the program would yield an uncon-

---

[4] By January 1, 1985, thirty-five States had approved IOLTA programs, thirty by State Supreme Court order and five by legislation. IOLTA Update, Winter 1985, at 1.

stitutional taking of property without due process or just compensation, in derogation of the Fifth Amendment to the United States Constitution or of art. 10 of the Massachusetts Declaration of Rights.[5] We follow the weight of authority in concluding that interest on nominal or short-term trust deposits is not property for constitutional purposes. "At present, the earnings of funds held in trust accounts can benefit neither the attorney nor the client, but simply redound to the benefit of the depository institution." *Matter of Interest on Lawyers' Trust*, 675 S.W.2d at 357. In other words, "[t]here simply is no 'property' now in existence that would be taken." *Petition of Minn. State Bar Ass'n*, 332 N.W.2d at 158.

Opponents of IOLTA in other jurisdictions have contended that the decision in *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155 (1980), supports the broad proposition that interest of the character involved here is property. We disagree. In *Webb's*, the court held unconstitutional a Florida statute authorizing a county to take as its own the interest accrued on an interpleader fund deposited in the registry of the county court when a fee, prescribed by another statute, was also charged for the clerk's services in receiving the fund into the registry. That holding is inapposite in the context of an IOLTA program. "The most relevant distinction, plainly, is the fact that no client is compelled to part with 'property' by reason of a state directive, since the program creates income where there had been none before, and the income thus created would never benefit the client under any set of circumstances . . . . It follows that no client has a 'property interest,' in the constitutional sense, which is being taken from him by this program." *Matter of Interest on Trust Accounts*, 402 So. 2d at 395-396. See also *Petition of N.H. Bar Ass'n*, 122 N.H. at

---

[5] The Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q. R.R.* v. *Chicago*, 166 U.S. 226 (1897), provides in part: "nor shall private property be taken for public use, without just compensation." Similarly, art. 10 of the Massachusetts Declaration of Rights provides that "no part of the property of any individual, can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people."

976; *Petition of Minn. State Bar Ass'n*, 332 N.W.2d at 158. We agree with the Florida court's analysis and conclude that there is no constitutional impediment to the IOLTA proposal.

Nor would the proposal contravene, in our view, relevant ethical considerations. The proposal involves only those funds which currently are not earning interest for the attorney or the client. "Basic principles of the law of agency and trusts seem to compel the conclusion that at some point it would be irresponsible for an attorney not to deposit a client's funds in an interest-bearing trust account, and pay such interest to the client. An attorney who fails to do so may be found to have violated the fiduciary duty owed to his client." *Petition of N.H. Bar Ass'n*, 122 N.H. at 976. See 2 A. Scott, Trusts §§ 180.3, 181, 182 (3d ed. 1967 & Supp. 1984). However, individually the amounts which would be pooled under IOLTA are either so small or are held for such a short period of time, that it is not feasible to place them at interest, given the transaction costs and unavailability of practical subaccounting procedures. See *Chase* v. *Pevear*, 383 Mass. 350, 362 (1981) (trustee, in investing funds, shall consider probable income). Thus, clients lose nothing by the IOLTA proposal, nor does any financial benefit inure to the participating lawyer in violation of Canon 9 of Rule 3:07 of the Rules of the Supreme Judicial Court.

On July 23, 1982, the Ethics and Professional Responsibility Committee of the American Bar Association issued Formal Opinion 348, concluding that a lawyer may ethically participate in an IOLTA program, similar to the proposal by the MBA and BBA, authorized by the State. We consider the Committee's reasoning to be sound: "The client has no right under the circumstances to require the payment of any interest on the funds to himself or herself because the amount of interest which the funds could earn is likely to be less than the appropriate charges for administering the earnings. The practical effect of implementing these programs is to shift a part of the economic benefit from depository institutions to tax-exempt organizations. There is no economic injury to any client. The program creates income where there was none before. For these reasons, the interest is not client funds in the ethical

sense any more than the interest is client property in the constitutional sense . . . . Therefore, assuming that either a court or a legislature has authorized a program . . . and thus, either implicitly or explicitly, has made a determination that the interest earned is not the clients' property, participation in the program by lawyers is ethical." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 348, at 8 (1982).

Finally, other jurisdictions have had the opportunity to explore the tax consequences of an IOLTA program. The "assignment of income" doctrine which has evolved since the decision in *Lucas* v. *Earl*, 281 U.S. 111 (1930), prohibits persons who generate income by their services or with their property from shifting income to persons in whose hands the income either would not be taxed or would be taxed at significantly lower rates. "Over the years the common elements of prohibited income assignment have been a tax avoidance motive and a scheme or device for shifting income to related or controlled taxpayers." *Matter of Interest on Trust Accounts*, 402 So. 2d at 390.

The Internal Revenue Service has ruled that interest earned on a lawyer's trust account and paid to a charitable entity under a program like Florida's is not includible in the clients' gross income. Rev. Rul. 81-209, 26 C.F.R. § 1.61-7 (1981). That ruling held that the assignment-of-income doctrine would pose no obstacle "so long as clients could in no way and to no degree control the creation or destiny of earnings generated on their attorney-held funds." *Matter of Interest on Trust Accounts*, 402 So. 2d at 391. The ruling, however, states that its conclusion is limited to the unique facts described therein. Thus, although nothing in the proposal before us would appear to implicate the assignment-of-income doctrine, we include in our order the suggestion that the IOLTA Implementation Committee consider whether a favorable tax ruling should be obtained prior to authorization of any deposits pursuant to the new DR 9-102 (C).

We commend the petitioners both for their unflagging efforts to realize the IOLTA concept and for their successful collaboration in achieving an acceptable compromise plan in the

months following the original submission of the petition.[6] We further urge the bar to encourage participation in this program which puts "idle funds to law-related public uses." ABA Formal Opinion 348, *supra* at 9.[7] Such participation is in accord with the exhortation that a "lawyer should assist in improving the legal system." ABA Model Code of Professional Responsibility Canon 8 (1980).

NOLAN, J. (concurring). I concur in the opinion and order of the court, but I write to underscore what I think is important. Our opinion and order govern only amounts "so small or [which] are held for such a short period of time" that the attorney is under no obligation to put them in an interest bearing account. Let there be no misunderstanding as to this limitation because an attorney who holds money for a client is ethically bound to put such money at interest and to account for such interest to the client if the amount is at all significant and if the period of holding is beyond a few days unless the client unequivocally waives his right to interest.

### APPENDIX.

On May 23, 1985, it was ordered by the Justices that the Rules of the Supreme Judicial Court be amended as follows:

| Rule 3:07: | By adding to DR 9-102 the new paragraph (C) set out below. |

---

[6] Initially, MLAC and the bar association disagreed about the advisability of a purely voluntary program, MLAC advocating an "opt out" approach in which lawyers would have to act affirmatively to be excluded from participation. The petitioners subsequently agreed on the voluntary system. They have further recommended in concert that the Boston Bar Foundation, the Massachusetts Bar Foundation, and MLAC be designated "charitable entities," as defined in new DR 9-102 (C) (2) (a), and that all charitable entities other than MLAC pay to MLAC not less than fifty percent of the IOLTA funds received less expenses properly allocable to such share.

[7] We underscore that participation in the IOLTA program is voluntary for lawyers. We leave it to the petitioners to enlist the aid of banking and other financial institutions in this program.

(C) A lawyer may elect to create, to maintain, and at any time to close an interest-bearing trust account (hereinafter "trust account") for clients' funds which in the judgment of the lawyer are nominal in amount, or are to be held for a short period of time, in compliance with the following provisions:

(1) The trust account may be established with any bank or savings and loan association authorized by Federal or State law to do business in Massachusetts and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or similar State insurance programs for State-chartered institutions. Funds in the trust account shall be subject to withdrawal upon request and without delay.

(2) Lawyers or law firms electing to deposit client funds in the trust account shall direct the depository institution:

(a) To remit interest or dividends, net of any service charges or fees, on the average monthly balance in the account, or as otherwise computed in accordance with an institution's standard accounting practice, at least quarterly, to a tax-exempt recipient disburser entity (hereinafter "charitable entity") designated by the Supreme Judicial Court, for use in (1) improving the administration of justice or (2) delivering civil legal services to those who cannot afford them.[1]

(b) To transmit with each remittance to the charitable entity a statement showing the name of the lawyer or law firm which deposited the funds; and

(c) At the same time to transmit to the depositing lawyer or law firm, with a copy to the IOLTA Implementation Committee or its designee, a report showing the amount paid to the charitable entity, the rate of interest applied, and the average account balance for the period for which the report is made.

(3) This court shall appoint an IOLTA Implementation Committee.[2]

(4) The representatives appointed to the Committee shall oversee the implementation of an IOLTA program, including:

(a) the encouragement of lawyers to create and maintain interest-bearing trust accounts under DR 9-102 (C);

(b) the encouragement of the banking community and the public to support an IOLTA program;

---

[1] The Boston Bar Foundation, the Massachusetts Bar Foundation and Massachusetts Legal Assistance Corporation are hereby designated as "charitable entities," as defined in DR 9-102 (C) (2) (a).

[2] The Boston Bar Foundation, the Massachusetts Bar Foundation, and the Massachusetts Legal Assistance Corporation each are requested to nominate by July 1, 1985, three representatives to the IOLTA Implementation Committee. The aforementioned charitable entities should be mindful in submitting their nominations the need for the Committee to be truly representative of the constituency of persons interested in the provision of civil legal services to the poor and the improvement of the administration of justice.

(c) the obtaining of tax rulings and other administrative approval for an IOLTA program as appropriate;[3]

(d) the preparation of such guidelines as may be deemed necessary or advisable for the operation of an IOLTA program, including (i) standards for the manner of recruiting of attorneys to participate in the IOLTA program, including the use of a common solicitation form describing all recipient charitable entities and a common fact sheet describing the IOLTA program for media and direct solicitation, and (ii) standards for recipient charitable entities in accounting for the expenditure of IOLTA funds, including permissible categories of, and a ceiling on, recipient expenses; and

(e) reporting to the court in such manner as the court may direct.

(5) Any charitable entity designated by the Supreme Judicial Court hereunder may engage in attorney recruitment efforts. All charitable entities, other than Massachusetts Legal Assistance Corporation, shall pay to Massachusetts Legal Assistance Corporation not less than fifty percent (50%) of the IOLTA funds received less expenses properly allocable to such share. Massachusetts Legal Assistance Corporation will retain for its use in the furthering of its corporate purpose all of the IOLTA funds received by it, by direct solicitation and from other charitable entities.

(6) Each charitable entity shall submit an annual report to the court describing its IOLTA activities for the year and providing a statement of the source and application of IOLTA funds received pursuant to this Order.

It was further ordered that the amendment accomplished by this order shall take effect on September 1, 1985.

---

[3] The IOLTA Implementation Committee may require that no deposits under the IOLTA program shall be made until a favorable tax ruling has been obtained.