**James W. PAULSEN, Appellant,**

v.

**STATE BAR OF TEXAS, Appellee.**

**No. 03–00–00254–CV.**

Court of Appeals of Texas,
Austin.

June 14, 2001.

Rehearing Overruled Oct. 4, 2001.

---

James W. Paulsen, Austin, pro se.

Terry Scarborough, Austin, for appellee.

Before Justices KIDD, YEAKEL and POWERS.*

* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment.

KIDD, Justice.

We withdraw our opinion and judgment issued March 29, 2001 on motion for rehearing, and substitute this one in its place. This is a case of first impression challenging the ethical viability of the Rules Governing the Operation of the Texas Equal Access to Justice Program ("IOLTA Rules"), which govern Interest on Lawyers Trust Accounts ("IOLTA accounts"). The IOLTA Rules dictate that interest income generated by IOLTA accounts be remitted to the Texas Equal Access to Justice Foundation ("the Foundation"), a Texas non-profit corporation. In *Phillips v. Washington Legal Foundation,* the United States Supreme Court held that "the interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal [the lawyer's client]." 524 U.S. 156, 172, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). Following issuance of the *Phillips* opinion, James W. Paulsen brought two challenges to the Texas IOLTA program. First, Paulsen sought a declaratory judgment that he was not subject to professional discipline for failure to participate in the Texas IOLTA program, pending definitive resolution of its constitutionality. We dismissed this cause for lack of a justiciable controversy. *Paulsen v. Texas Equal Access to Justice Found.,* 23 S.W.3d 42, 48 (Tex.App.—Austin 1999, pet. filed). Paulsen also withdrew from participation in the mandatory Texas IOLTA program. The sanction for failure to comply with the mandatory IOLTA program is suspension of the attorney's law license. The State Bar of Texas ("the Bar") refused to grant Paulsen a good-cause exemption to mandatory participation and the district court upheld that decision. Paulsen initiated this appeal pursuant to the IOLTA Rules.

*See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

IOLTA Rule 25(d), *reprinted in* Texas Rules of Court, State 481, 485 (West 2000). We will affirm.

## History of IOLTA Programs

Lawyers are often in possession of client funds for use in legal transactions and are required to keep these funds separate from their own. Tex. Disciplinary R. Prof. Conduct 1.14(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998) (State Bar Rules art. X, § 9). It has always been possible, and economically feasible, to deposit larger sums into separate interest-bearing savings accounts for the benefit of the individual client. However, client funds that are nominal in amount, or held for short duration, do not earn enough interest to offset the bank fees and administrative costs of maintaining a separate savings account. Historically, lawyers would pool these *de minimis* client funds into a single trust account that permitted withdrawal on demand ("demand deposit accounts" or "DDAs"). This provided for efficient and convenient management of, and access to, client trust funds for use in various transactions. Federal law prohibited paying interest on DDAs, so financial institutions enjoyed free use of such funds. *See* 12 U.S.C. §§ 371a, 1828(g) (West 1989) & § 1464(b)(1)(B)(i) (West Supp.2000).

In 1980, Congress authorized the creation of interest-bearing accounts (Negotiable Order of Withdrawal or "NOW accounts"), from which depositors can "make withdrawals by negotiable or transferable instruments for the purpose of making transfers to third parties." *Id.* § 1832(a)(1) (West 1989). These interest-bearing NOW accounts are only available "with respect to deposits ... which consist solely of funds in which the entire beneficial interest is held by one or more individuals or by an organization which is operated primarily for religious, philanthropic, charitable, educational, political, or other similar purposes and which is not operated for profit." *Id.* § 1832(a)(2). For-profit corporations and partnerships cannot earn interest by means of NOW accounts; however, their funds can be deposited into NOW accounts "if the funds are held in trust pursuant to a program under which charitable organizations have 'the exclusive right to the interest.'" *Phillips,* 524 U.S. at 161, 118 S.Ct. 1925.

Consequently, the states realized that client funds being held in non-interest bearing DDAs, benefitting only financial institutions, could be pooled in NOW accounts to bear interest. When small and short-term sums were aggregated, the total could generate enough interest to offset bank fees.[1] However, it was still impossible to generate *net interest* for the benefit of individual clients. Assigning fractions of the interest to individual clients would cost more than the interest earned. First, in addition to bank charges, clients would have to pay for the accounting services needed to calculate the interest attributable to various sums on deposit for staggered periods of time.[2] Second, interest remitted to clients is includible in the

---

1. Today, many banks waive all fees for IOLTA accounts. *Washington Legal Found. v. Texas Equal Access to Justice Found.,* 86 F.Supp.2d 624, 641 (W.D.Tex.2000). However, when banks do charge fees for IOLTA accounts, the fees still sometimes exceed the interest earned. *Id.* at 643 (reciting testimony that 46–47% of IOLTA accounts cause the Foundation to lose money).

2. For example, a solo practitioner testified in federal district court that "on average he keeps the funds of 20–30 clients in his account in the amount of $20,000 to $30,000; that he keeps most of the client funds in the account for 30 to 60 days." *Id.* at 640.

clients' gross income and is subject to income tax. The costs of calculating and remitting IOLTA account interest due to individual clients would thus eliminate any theoretical gain. However, the total sum of interest earned on NOW accounts could benefit a single, non-profit beneficiary because the attendant accounting expenses are reduced, and income taxes are eliminated. Accounting expenses are reduced because the financial institutions remit the entire interest to one beneficiary, for example, the Foundation. *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 86 F.Supp.2d 624, 641 (W.D.Tex.2000). Income taxes are eliminated because no income is realized if clients have no control over the disposition of the interest. Rev. Rul. 87–2, 1987–1 C.B. 18, 1987 WL 383666; Rev. Rul. 81–209, 1981–2 C.B. 16, 1981 WL 165692. Over the last nineteen years, IOLTA programs have been created in fifty states and the District of Columbia to provide funding for indigent legal services. In Texas, this program is known as the Texas Equal Access to Justice Program ("TEAJP").

In 1984, the Texas Supreme Court created an IOLTA program in which lawyers could voluntarily participate. In 1988, participation became mandatory, which resulted in a ten-fold increase in funds forwarded to the Foundation. The IOLTA Rules set rigid standards for managing the TEAJP.

### The Texas IOLTA Rules

The IOLTA Rules dictate that the TEAJP be administered by the Foundation. IOLTA Rule 1. Lawyers licensed in Texas, who receive client funds that are "nominal in amount or are reasonably anticipated to be held for a short period of time, *must establish and maintain* a separate interest-bearing insured depository account at a financial institution and deposit in the account such funds." IOLTA Rule 4 (emphasis added). The lawyer is instructed to "exercise good faith judgment in determining initially whether client funds should be included in the Program." IOLTA Rule 6. The lawyer has no liability for any determination made in good faith in accordance with the IOLTA Rules. IOLTA Rule 23. The guiding principle is whether "such funds ... could not reasonably be expected to earn interest for the client or if the interest which might be earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining the account, service charges, accounting costs and tax reporting costs which would be incurred in attempting to obtain interest on such funds for the client." IOLTA Rule 6. The account must be "a trust account from which withdrawals or transfers may be made on demand." IOLTA Rule 7.[3] All licensed lawyers are required to file an annual compliance statement with the Foundation, reporting their IOLTA status. IOLTA Rules 5, 24.

The Foundation holds "the entire beneficial interest in the interest earned." IOLTA Rule 4. The Foundation is authorized to make grants only to qualified organizations, which must have section 501(c)(3) status under the Internal Revenue Code, and a primary purpose of providing legal services to individuals defined as indigent by the Foundation. IOLTA

---

**3.** Lawyers "must attempt in good faith to locate an interest bearing account that would generate interest greater than service charges" on IOLTA accounts. IOLTA Rule 4B, *reprinted in* Texas Rules of Court, State 481, 482 (West 2000). As already noted, some banks do not waive service fees for IOLTA accounts and in such cases, the fees can exceed the interest earned. *See supra* note 1. If the lawyer is unable to locate an account that will generate interest in excess of service charges, he is required to maintain a non-interest bearing client trust account. IOLTA Rule 4B.

Rules 10, 11. Foundation grants cannot be expended on any matter that "might reasonably be ·expected to result in payment of a fee for legal services" unless the indigent individual "has made reasonable efforts to obtain the services of an attorney in private practice ... and has been unable to obtain such services." IOLTA Rules 13, 14. Thus, Foundation grants do not fund organizations that compete with private lawyers for clients or fees. There are also restrictions on the types of cases that can be funded.[4]

The IOLTA Rules were adopted with consideration of the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"), which require that "[u]pon receiving funds ... in which a client ... has an interest, a lawyer shall promptly notify the client.... Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client ... any funds ... that the client ... is entitled to receive." Tex. Disciplinary R. Prof. Conduct 1.14(b). The IOLTA Rules do not prohibit a lawyer from establishing interest-bearing accounts or other investments as permitted by the Disciplinary Rules, with interest payable "as directed by clients for whom funds are not deposited in accordance with these [IOLTA] Rules." IOLTA Rule 21. The IOLTA Rules explicitly state that the Foundation and grant recipients cannot require any lawyer to take any action in violation of the Disciplinary Rules. IOLTA Rule 22.

### Ethical and Legal Challenges to IOLTA

Even in their infancy, IOLTA programs were challenged. In 1982, the American Bar Association issued a formal opinion dealing with the question of "whether the client has a constitutionally protected property right in the interest earned on these client funds" and whether lawyers could ethically participate in IOLTA programs. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 348 (1982), *reprinted in* ABA/BNA Lawyer's Manual on Professional Conduct 801:114 (1986). This ethics opinion states as follows:  ·

The Model Code does not establish whether it is ethically permissible for lawyers to participate in these programs. In the opinion of the Committee, however, the rationale for the ethical acceptability for these programs is the same as the premise for acceptability in constitutional law and tax law. The client has no right under the circumstances to require the payment of any interest on the funds to himself or herself because the amount of interest which the funds could earn is likely to be less than the appropriate charges for administering the earnings. The practical effect of implementing these programs is to shift a part of the economic benefit from depository institutions to tax-exempt organizations. There is no economic injury to any client. The program creates income where there was none before. For these reasons, the interest is not client funds in the ethical sense any more than the interest is client property in the constitutional sense or client income in the tax law sense. Therefore, assuming that either a court or a legislature has authorized a

---

4. "No funds shall be granted by the Foundation to directly fund class action suits, lawsuits against governmental entities, or lobbying for or against any candidate or issue. Provided however, that funds may be granted to finance suits against governmental entities on behalf of individuals in order to secure entitlement to benefits ... provided directly to indigent individuals." IOLTA Rule 15.

program with the attributes described above and thus, either implicitly or explicitly, has made a determination that the interest earned is not the clients' property, participation in the program by lawyers is ethical.

*Id.* at 801:119.

Florida was the first state to adopt an Interest on Trust Accounts ("IOTA") program.[5] One of the earliest challenges to the program was *Cone v. State Bar*, 819 F.2d 1002 (11th Cir.1987), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). In *Cone*, a law firm inadvertently failed to remit to the client the $13.75 balance left in a cost deposit account at the conclusion of representation. The money was deposited into the firm's IOTA account, where it generated $2.25 in interest over a three-year period. When the firm discovered its error, it remitted $13.75 to the client. She sued, claiming that the appropriation of $2.25 constituted an uncompensated taking of private property in violation of the Fifth Amendment and a deprivation of her property without due process. *Id.* at 1005. The Court of Appeals for the Eleventh Circuit observed that only "[b]y combining all such deposits, interest income has been created which was not within the legitimate expectations of the owner of any one of the principal amounts." *Id.* at 1007. The court concluded that "appellant has no property interest in the interest" and upheld the constitutionality of the IOTA program. *Id.*

Prior to *Phillips*, cases examining IOLTA programs almost unanimously concluded, as had the Eleventh Circuit, that interest earned on IOLTA accounts was not client property. *Washington Legal Found. v. Massachusetts Bar Found.*, 795 F.Supp. 50, 53 (D.Mass.1992), *aff'd*, 993 F.2d 962, 976 (1st Cir.1993); *In re Massa-*

chusetts Bar Ass'n, 395 Mass. 1, 478 N.E.2d 715, 718–19 (1985); *In re New Hampshire Bar Ass'n*, 122 N.H. 971, 453 A.2d 1258, 1261 (1982); *In re Minnesota State Bar Ass'n*, 332 N.W.2d 151, 158 (Minn.1982); *In re Interest on Trust Accounts*, 402 So.2d 389, 396 (Fla.1981); *but see Carroll v. State Bar*, 166 Cal.App.3d 1193, 213 Cal.Rptr. 305, 312 (1985), *cert. denied*, 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985). The Texas ethical opinion examining IOLTA relies on the reasoning in these cases for its underpinning. Tex. Comm. on Professional Ethics, Op. 421, 48 Tex. B.J. 208 (1985) (citing *In re New Hampshire Bar Ass'n*, 453 A.2d at 1258; *In re Minnesota State Bar Ass'n*, 332 N.W.2d at 151; *In re Interest on Trust Accounts*, 402 So.2d at 396). Public funding of indigent legal services has been drastically reduced and public debate regarding how to fund indigent legal services has been heated. Because IOLTA programs have been so successful, it has been relatively easy for courts to conclude that the *de minimis* sums involved do not constitute client property. *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 873 F.Supp. 1 (W.D.Tex.1995), *aff'd in part, vacated in part, remanded by* 94 F.3d 996 (5th Cir.1996), *aff'd and remanded sub nom. Phillips v. Washington Legal Found.*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

### The Phillips Litigation

By far, the most serious challenge to IOLTA, *Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, was filed in United States District Court for the Western District of Texas in Austin. *Id.* In that case, the plaintiffs sought to establish three propositions: (1) that the client possesses property rights in the interest derived from IOLTA accounts;

---

5. Florida's IOTA program is similar to the    Texas IOLTA program.

(2) that IOLTA violates clients' Fifth Amendment rights by taking their property; and (3) that this taking is without just compensation. *Id.* at 5. The district court denied the claim on the basis that the interest on IOLTA accounts was not the "property" of the client. *Id.* at 7. The Court of Appeals for the Fifth Circuit reversed, holding that "any interest that accrues belongs to the [client], unless they agree otherwise." *Id.*, 94 F.3d at 1004 (footnote omitted).

Petition for writ of certiorari was granted by the United States Supreme Court, which answered only one narrow question: "[W]hether the interest on an IOLTA account is 'private property' of the client for whom the principal is being held." *Phillips*, 524 U.S. at 164, 118 S.Ct. 1925 (footnote omitted). The Court's analysis relied heavily on "the rule that 'interest follows principal.'" *Id.* at 165, 118 S.Ct. 1925 (citation omitted). State courts have reasoned that IOLTA programs create income where none existed previously, thus clients have no property rights to interest that would be completely devoured by bank fees, accounting costs, and income taxes. The Supreme Court rejected this reasoning and stated that "regardless of whether the owner of the principal has a constitutionally cognizable interest in the *anticipated* generation of interest by his funds, any interest that *does* accrue attaches as a property right incident to the ownership of the underlying principal." *Id.* at 168, 118 S.Ct. 1925. Finally, the Court held "that the interest income generated by funds held in IOLTA accounts is the 'private property' of the [client]."[6] *Id.* at 172, 118 S.Ct. 1925.

The *Phillips* case was remanded, however, to the federal district court for consid-

eration of (1) whether IOLTA interest had been taken by the state; and (2) whether any amount of just compensation was warranted. *Id.* On remand, the federal district court took up each question separately and answered each in the negative. *Washington Legal Found.*, 86 F.Supp.2d at 643, 647. The court examined three factors identified by the Supreme Court as pertinent to whether there had been a taking. The court concluded that: (1) "the economic impact of the regulation on Plaintiffs is nill"; (2) "Plaintiffs cannot hold a legitimate investment-backed expectation of interest when funds placed in IOLTA cannot by definition earn net interest"; and (3) "[t]he governmental action in this case does not implicate fundamental principles of 'justice and fairness' because there is no cost to Plaintiffs." *Id.* at 646–47 (citations omitted). Furthermore, the court observed that "[i]n determining just compensation, 'the question is *what has the owner lost*, not what has the taker gained.'" *Id.* at 637 (citation omitted) (emphasis added). The client testified that "he is no worse off because of IOLTA" and the court concluded that "Plaintiffs have failed to present evidence of a loss." *Id.* at 643.

### Paulsen's Challenge

Following the Supreme Court's decision in *Phillips*, Paulsen concluded that participation in IOLTA was a violation of the Disciplinary Rules. Specifically, he charged that maintaining an IOLTA account violates the requirements of notification, delivery, and accounting imposed on lawyers who receive client property. Tex. Disciplinary R. Prof. Conduct 1.14(b). Paulsen's contention is that when an attorney gets a statement from a financial insti-

---

**6.** Thus, the Court impliedly overruled those state cases which found that IOLTA interest did not constitute client property.

tution reflecting interest earned on an IOLTA account, at that point in time he has knowledge that his client has received property. Further, participation in IOLTA requires the attorney to give his client's property to the Foundation. This, Paulsen contends, he cannot ethically do. Paulsen withdrew from IOLTA participation and gave notice of this fact to the Foundation in his 1999 IOLTA compliance statement. The Bar gave Paulsen thirty days to comply with the IOLTA Rules, and he sought an injunction from this Court. We denied his request. *Paulsen,* 23 S.W.3d at 48. Faced with imminent suspension of his law license, Paulsen applied to the Bar for a good-cause exemption. The Bar's IOLTA review committee, and subsequently the State Bar's Board of Directors, denied his request for an exemption. Paulsen filed suit in the district court, which upheld the denial of his request for an exemption. Paulsen appeals to this Court.

### Discussion

■ Pursuant to the IOLTA rules, Paulsen was entitled to challenge the State Bar's failure to grant him a good cause exemption by trial *de novo* in a district court of Travis County. *See* IOLTA Rule 25(d). In that proceeding, the IOLTA Rule places the burden of proof on Paulsen to prove, by a preponderance of the evidence, the existence of "good cause."[7] In

seeking to overturn the State Bar's decision to deny him a good-cause exemption from mandatory participation in IOLTA, Paulsen was required to establish not only that the IOLTA program was *per se* unethical, but also that nonparticipation was his *only* ethical remedy vis-à-vis his clients. Additionally, the action of the State Bar must be judged against the current state of the Texas IOLTA litigation. There has not yet been a final resolution of the *Phillips* litigation. The most recent holding in that litigation comes from the United States District Court and states that IOLTA does *not* result in a taking in the Fifth Amendment constitutional sense. *Washington Legal Found.*, 86 F.Supp.2d at 647. The trial court concluded that Paulsen had not met his burden of proof and denied him any relief. We concur with that decision.

### A. Texas Ethics Opinion 421

■ In 1984, the Texas Committee on Professional Ethics found that attorneys' participation in the IOLTA program did not violate the Texas Code of Professional Responsibility ("the Code").[8] Tex. Op. 421 at 209 (9–0 decision). The opinion stated that the Code required lawyers to segregate client funds from their own, "maintain complete records of client funds, render appropriate accounts to clients, and promptly pay to the client as requested the

---

7. "Good cause" shall exist when an attorney is unable to comply with this Article because of extraordinary hardship or extenuating circumstances which were not willful on the part of the attorney and were beyond his or her control. IOLTA Rule 25(b).

8. Article 10, section 9 of the State Bar Rules (the Texas Disciplinary Rules of Professional Conduct) was adopted and former article 10, section 9 of the State Bar Rules (the Texas Code of Professional Responsibility) was repealed, effective January 1, 1990, by Order of

the Texas Supreme Court dated October 17, 1989. Paulsen indicated at oral argument that following the United States Supreme Court's decision in *Phillips*, he requested a new ethics opinion on the question. The Bar replied that as long as the litigation continues, there will be no new ethics opinion. We note, however, that this is an indication that the present actions by Paulsen could be considered premature, because the question of whether there is a constitutional taking without just compensation has not been finally resolved.

funds which the client is entitled to receive." *Id.* at 208. These requirements have not changed under the Disciplinary Rules now in effect. Tex. Disciplinary R. Prof. Conduct 1.14(a), (b). The opinion states without qualification that "[t]he interest earned [on client accounts] belongs to the client." Tex. Op. 421 at 208 (citing Tex. Comm. on Professional Ethics, Op. 404 (1981)). In this regard, the opinion is in harmony with the *Phillips* holding. 524 U.S. at 172, 118 S.Ct. 1925. However, the opinion also relies on state court cases stating that "clients do not have a property right in the interest earned on [IOLTA accounts]." Tex. Op. 421 at 208 (citing *In re New Hampshire Bar Ass'n*, 453 A.2d at 1258; *In re Minnesota State Bar Ass'n*, 332 N.W.2d at 151; *In re Interest on Trust Accounts*, 402 So.2d at 396). The opinion then paraphrases the above quoted language from ABA formal opinion 348. *Id.* at 208–09.

In general, it is true that the ABA and various state ethics opinions painted with a broad brush in their analysis of whether clients have a property right in IOLTA interest. These ethics opinions consider a trio of factors: (1) the *de minimis* sums involved; (2) the windfall traditionally enjoyed only by financial institutions; and (3) the resolution of conflicts over funding indigent legal services. The ethics committees and courts have engaged in a very pragmatic analysis of the ethical and constitutional issues raised by IOLTA challenges. In practice, IOLTA took from the banks and gave to the poor. Clients were no worse off than when banks used their funds interest-free, and so their claims were dismissed rather summarily. In *Phillips,* the Supreme Court has adopted a more rigorous, purist, constitutional approach to the resolution of the property question. However, *Phillips* has removed only part of the underpinnings of Texas ethics opinion 421.

Ethics opinion 421 is still in effect in Texas. It has been undermined, perhaps severely, because of its reliance on the state cases overruled by implication, in some respects, by *Phillips.* However, we emphasize that because the state courts concluded that there was no private property involved, they never engaged in an analysis of whether there had been a constitutional taking without just compensation. Neither has the United States Supreme Court. *Phillips,* 524 U.S. at 172, 118 S.Ct. 1925. Texas ethics opinion 421 always assumed that "interest earned belongs to the client." Tex. Op. 421 at 208. This statement refers to the *gross interest* earned on client funds and is not in conflict with *Phillips* in any regard. On remand, the United States District Court for the Western District of Texas was the first court to analyze the question of whether there is indeed a taking without just compensation. *Washington Legal Found.,* 86 F.Supp.2d at 647. The district court's well-reasoned opinion shows us that reversal of the state court opinions regarding whether IOLTA interest constitutes client property does not inexorably lead to the conclusion that there has been a taking without just compensation. *Id.* The Supreme Court's narrow holding, that IOLTA interest constitutes client property, has certainly undermined Texas ethics opinion 421, but we regard opinion 421 as continuing to have a certain ethical vitality.

■ In addition, when deciding the preliminary question of whether IOLTA interest is client property, the cases and ethics opinions relied heavily on the concept of *net interest.* They concluded that because the gross interest generated by nominal or short-term funds would be completely depleted by bank fees, accounting costs, and income taxes if remitted to clients, there was no *net interest* in which the client

could have a property interest. Although the Supreme Court has dismissed this reasoning with respect to the question of whether IOLTA interest constitutes client property, the district court's opinion on remand demonstrates that the concept of *net interest* is still relevant in determining whether there has been a taking without just compensation. If client funds cannot generate *net interest* for the client, the client has suffered *no loss,* and thus no compensation is due. *Id.* at 643. If there is no taking without just compensation, participation in IOLTA does not violate the Disciplinary Rules because the attorney is not withholding from the client net interest income which the client would be "entitled to receive." Tex. Disciplinary R. Prof. Conduct 1.14(b); Tex. Op. 421 at 209.

Further, Paulsen can cite to no ethics opinion saying that lawyers' participation in IOLTA is unethical. Nor can he point to any final court proceeding in which IOLTA has been held an unconstitutional taking of property without just compensation. Ethics opinion 421 still has vitality and should guide lawyers in Texas. Therefore, we cannot say that participation in IOLTA is *per se* unethical.

## B. *IOLTA Rules and the Disciplinary Rules*

Paulsen cannot demonstrate that IOLTA participation is *per se* unethical; however, he maintains that participation is unethical as he interprets *Phillips.* Assuming without deciding that ethics interpretation is for each individual lawyer's conscience,[9] in our view Paulsen must demonstrate that his nonparticipation in the IOLTA program is the *only* remedy for his ethical dilemma. This he has not done.

■ Annually, the Foundation reports to the Bar the name of every lawyer who is not in compliance with the IOLTA Rules. IOLTA Rule 24(d). The Bar then notifies the lawyer that he has thirty days to comply or risk immediate suspension of his law license by the Supreme Court of Texas. *Id.* Suspension of the law license is vacated during administrative review and while any suit is pending. IOLTA Rule 25(e). There is only one ground for exemption from IOLTA participation for a practicing attorney who handles client funds. The IOLTA Rules provide as follows:

Review and Appeal

(a) An attorney may file a written request based upon good cause for exemption from compliance with any of the requirements of these Rules, an extension of time for compliance, an extension of time to comply with a deficiency notice, or an extension of time to file an annual compliance statement....

(b) "Good cause" shall exist when an attorney is unable to comply with this Article because of *extraordinary hardship* or *extenuating circumstances* which were *not willful*

---

9. Each lawyer's own conscience is the touchstone against which to test the extent to which his actions may rise above the disciplinary standards prescribed by these rules. The desire for the respect and confidence of the members of the profession and of the society which it serves provides the lawyer the incentive to attain the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction. So long as its practitioners are guided by these principles, the law will continue to be a noble profession. This is its greatness and its strength, which permit of no compromise.

Tex. Disciplinary R. Prof. Conduct preamble ¶ 9, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998) (State Bar Rules art. X, § 9).

on the part of the attorney and were *beyond his or her control.*

. . . .

(d) ... the burden of proof shall be on the attorney appealing, the burden shall be by a preponderance of the evidence, and the attorney shall prove the existence of "good cause" as defined herein. The trial court shall proceed to hear and determine the issue without a jury. Either party shall have a right to appeal.

IOLTA Rule 25 (emphasis added). Thus, to receive a good-cause exemption from compliance, Paulsen must show either (1) extraordinary hardship, or (2) extenuating circumstances which were not willful and were beyond his control.

■ At the outset, the Bar argues, *inter alia,* that Paulsen's *deliberate* refusal to deposit a check in his IOLTA account means that his noncompliance is *willful;* therefore, he is not eligible for an exemption. Pursuant to this reading of the IOLTA Rules, any lawyer who deliberately refused to participate, for any reason, would not be eligible for an exemption. We do not read IOLTA Rule 25 so narrowly. The IOLTA Rule does not require that the *failure to participate* is "not willful on the part of the attorney." The IOLTA Rule requires that the *extenuating circumstance preventing compliance* is "not willful on the part of the attorney." On appeal, the United States Supreme Court may eventually hold that IOLTA constitutes an unconstitutional taking without just compensation. In such a case, if the Texas Supreme Court were to refuse to amend the IOLTA Rules and the State Bar insisted upon compliance, a lawyer might deliberately refuse to participate, yet be deserving of an exemption due to "extenuating circumstances which were not willful on the part of the attorney and were beyond his or her control." Howev-

er, at this time, we have no such guidance from the United States Supreme Court. The question remains whether the *current circumstances* actually prevent Paulsen's compliance.

■ First, Paulsen argues that the Disciplinary Rules and IOLTA Rules are incompatible and that an attorney cannot comply with both. The Disciplinary Rules impose the following duties on lawyers handling client funds: (1) to maintain complete records of client accounts; (2) to notify clients of receipt of funds; and (3) to promptly deliver to the client any funds *he is entitled to receive.* Tex. Disciplinary R. Prof. Conduct 1.14(a), (b) (emphasis added). Paulsen states that the IOLTA Rules "contemplate that an individual attorney will *not* notify the client of receipt of IOLTA interest, will *not* maintain records of that interest, and will *not* pay that interest to the client." Paulsen is correct, as far as this statement goes. The IOLTA Rules *do contemplate* that an attorney need not take such steps, because no such duty is imposed on him by law or rule. However, the IOLTA Rules do not *prohibit* an individual attorney, whose personal ethics so compel him, from giving notice to clients that their funds are held in an IOLTA account or from maintaining records of IOLTA account activity. We conclude that these rules permit lawyers to make full disclosure to clients regarding the use of IOLTA accounts and clients' property interest therein. Although the interest will continue to be paid to the Foundation, there is no conflict with the Disciplinary Rules. The Disciplinary Rules direct the attorney to "deliver to the client any funds he is *entitled to receive." Id.* at 1.14(b) (emphasis added). There is no authority for the assertion that clients are "entitled to receive" IOLTA interest. After deductions are made for bank fees and the lawyer's internal accounting costs,

the client may be "entitled to receive" only an IRS 1099 form indicating that income tax is due on the interest he never actually received.

■ Second, the IOLTA Rules direct participants as follows: "The attorney, law firm or professional corporation should exercise *good faith judgment* in determining initially whether client funds should be included in the Program and should review at reasonable intervals whether changed circumstances require further action with respect to such funds." IOLTA Rule 6 (emphasis added). Attorneys should exercise this judgment to determine whether client funds "could not reasonably be expected to earn interest for the client or if the interest which might be earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining the account, service charges, accounting costs and tax reporting costs which would be incurred." *Id.* At any point in time, if in the exercise of his good faith judgment, Paulsen can invest client funds in such a manner that every client is "entitled to receive" interest, he is free, indeed obligated, to do so. He could utilize separate NOW accounts, separate savings accounts, in-firm pooling, or sub-accounting. *Washington Legal Found.*, 86 F.Supp.2d at 641. He would therefore have no IOLTA account, and yet would still be in compliance with the IOLTA Rules.

### CONCLUSION

Because Paulsen cannot demonstrate that his unilateral and complete withdrawal from the Texas IOLTA program was the only way to resolve his ethical dilemma, we hold that he is not entitled to a good-cause exemption from mandatory IOLTA compliance and is subject to sanction under the IOLTA Rules. IOLTA Rules 24(d), 25(b). We affirm the judgment of the district court, upholding the decision of the State Bar of Texas.