**WASHINGTON LEGAL FOUNDATION, et al., Plaintiffs,**

v.

**MASSACHUSETTS BAR FOUNDATION, et al., Defendants.**

Civ. A. No. 91–11135–T.

United States District Court, D. Massachusetts.

May 28, 1992.

Francis C. Newton, Jr., Boston, Mass., John C. Scully, Daniel J. Popeo, Paul D.

Kamenar, Richard A. Samp, Washington Legal Foundation, Washington, D.C., for plaintiffs.

Donald K. Stern, Hale & Dorr, Allan van Gestel, Goodwin, Proctor & Hoar, Joseph L. Kociubes, Bingham, Dana & Gould, William W. Porter, Dept. of the Atty. Gen., Boston, Mass., for defendants.

## MEMORANDUM

TAURO, Chief Judge.

By a Rule promulgated in 1990, the Massachusetts Supreme Judicial Court ("SJC") requires lawyers to deposit certain non-interest bearing client funds into an Interest on Lawyers' Trust Account ("IOLTA").[1] The interest earned on these funds is to be paid to a non-profit organization approved by the SJC "for use in (1) improving the administration of justice or (2) delivering civil legal services to those who cannot afford them." DR 9102(C)(2)(a). The SJC has designated three organizations as beneficiaries of the program: the Massachusetts Bar Foundation, the Boston Bar Foundation and the Massachusetts Legal Assistance Corporation.[2] They are the defendants here.

Plaintiffs, the Washington Legal Foundation, two Massachusetts lawyers and two Massachusetts citizens who use legal services, seek a declaration that the IOLTA program violates their constitutional rights. First, plaintiffs assert that the IOLTA program constitutes a taking of their property without just compensation in violation of the Fifth and Fourteenth Amendments. Second, they argue that the SJC Rule compels them to associate with and support views with which they do not agree, in violation of the First and Fourteenth Amendments.

Defendants' Motion to Dismiss is before

---

**1.** *See* Ethics Rule 3:07, DR 9–102(C).

**2.** The IOLTA Guidelines provide that any non-profit organization may apply to be designated as a recipient of funds if, *inter alia,* it includes "among its purposes providing funds for deliver-

ing civil legal services to those who cannot afford them and/or for improving the administration of justice." *See* Mass. Rules of Court (1992 ed.) IOLTA Guidelines ("IOLTA Guidelines") D.

the court.[3]

## I.

The Fifth Amendment provides that private property shall not be taken for public use, without just compensation.[4] For there to be a taking, the government must interfere "with interests that [are] sufficiently bound up with the reasonable expectations" of the plaintiff asserting the deprivation. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). *See also Webb's Fabulous Pharmacies,* 449 U.S. at 161, 101 S.Ct. at 450 ("[A] mere unilateral expectation or an abstract need is not a property interest entitled to protection."); *Cone v. State Bar of Fla.,* 819 F.2d 1002, 1005 (11th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987) (purpose of takings clause is to "protect the claimant's reasonable, often investment-backed expectations, rather than inchoate unilateral expectations") (quoting *Penn Central,* 438 U.S. at 124–25, 98 S.Ct. at 2659–60). In other words, there must be a cognizable property interest. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984); *Penn Central,* 438 U.S. at 125, 98 S.Ct. at 2659. Whether such an interest exists is a question of state law. *See, e.g., Webb's Fabulous Pharmacies,* 449 U.S. at 161, 101 S.Ct. at 450 ("[p]roperty interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

### A. IOLTA–Generated Interest

█ Under Massachusetts law, the "interest on nominal or short-term trust deposits is not property for constitutional purposes." *Petition by the Mass. Bar Ass'n,* 395 Mass. 1, 478 N.E.2d 715, 718 (1985). The court there reasoned that, without IOLTA, "the earnings of funds held in trust accounts can benefit neither the attorney nor the client, but simply redound to the benefit of the depository institution." *Id.* (citation omitted). In such circumstances, "there simply is no 'property' now in existence that would be taken." *Id.* (citation omitted).

This conclusion is consistent with federal banking law, prohibiting a partnership (such as a law firm) from pooling client funds in an interest bearing checking account. *See* 12 U.S.C. § 1832(a). A lawyer, therefore, normally places nominal or short-term client funds into a non-interest bearing account.

Federal law, on the other hand, exempts non-profit organizations from the prohibition against pooling funds. *See id.* The IOLTA program, therefore, utilizes this exemption to generate funds for approved beneficiaries. *See generally Cone,* 819 F.2d at 1005–06 (explaining the relationship between federal banking laws and the emergence of IOLTAs). Under the SJC Rule, a client's funds are placed into an IOLTA if no economic benefit would accrue

**3.** In addition to arguing that plaintiffs' constitutional challenges are without merit, defendants contend that two plaintiffs lack standing. Before addressing the merits of a constitutional challenge, "a court must decide whether the party has standing to assert the constitutional rights in question." *Postscript Enterprises, Inc. v. Westfall,* 771 F.2d 1132, 1135 (8th Cir.1985).

Here, there is no serious dispute that at least some of the plaintiffs have standing. The Complaint alleges that Timothy J. Howes is an attorney who regularly holds nominal funds for his clients. As required by the Rule, he places these amounts in an IOLTA. Similarly, the Complaint alleges that Karen Parker has used legal services in the past and intends to use them in the future. They, therefore, have standing to challenge the constitutionality of the Rule. *See Greater Boston Chamber of Commerce v. City of Boston,* 772 F.Supp. 696, 698 (D.Mass.1991) (for standing, plaintiff must show an actual or threatened injury traceable to defendant's action, which is capable of redress by judicial decision).

**4.** This prohibition applies to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980); *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979 (1897).

to the client by maintaining them otherwise.[5]

Numerous courts have held, along with the SJC, that IOLTA programs do not amount to a taking, because they create interest income "which was not within the reasonable expectations of the owner of any one of the principal amounts." *Cone,* 819 F.2d at 1007. *See, e.g., Carroll v. State Bar of Cal.,* 166 Cal.App.3d 1193, 213 Cal.Rptr. 305, *cert. denied,* 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985); *In re Interest on Lawyers' Trust,* 283 Ark. 252, 675 S.W.2d 355 (1984); *Matter of Interest on Lawyers' Trust Accounts,* 672 P.2d 406 (Utah 1983); *Petition of N.H. Bar Ass'n,* 122 N.H. 971, 453 A.2d 1258 (1982); *In re Interest on Trust Accounts,* 402 So.2d 389 (Fla.1981).

This court concludes, therefore, that plaintiffs have no property rights in the interest generated by the IOLTA program.

### B. *Beneficial Use of IOLTA Funds*

█ Plaintiffs rely next on state trust law to argue that the IOLTA program unconstitutionally deprives them of the beneficial use of their property.[6] Pls.' Mem. in Opp. to Mot. to Dismiss at 4 ("it is the seizure of the beneficial use of the principal that is at the heart of the unconstitutional taking challenged by the Plaintiffs"). The IOLTA program, according to plaintiffs, deprives them of their "rights to use or not use [their] property as [they] desire[ ]." *Id.* at 6 n. 2.

Under Massachusetts law, however, the extent of a putative beneficiary's property interest is limited by the so-called "prudent man doctrine" which provides that,

[a]ll that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested.

*Chase v. Pevear,* 383 Mass. 350, 419 N.E.2d 1358, 1365 (1981) (quoting *Harvard College v. Amory,* 26 Mass. 446, 461 (1831)).

Given the circumstances presented here, a trustee would not be required to invest the kinds of nominal or short-term funds at issue. *Petition by Mass. Bar Ass'n,* 478 N.E.2d at 718 ("[I]ndividually, the amounts which would be pooled under IOLTA are either so small or held for such a short period of time, that it is not feasible to place them at interest, given the transaction costs and unavailability of practical sub-accounting procedures.").

This court concludes, therefore, that plaintiffs have no property interest in the funds subject to the SJC Rule. Their Fifth and Fourteenth Amendment claims, therefore, are without merit.[7]

### II.

Plaintiffs also contend that their First Amendment rights of association and

---

**5.** The guidelines provide that:

In determining whether to deposit funds into an IOLTA account or into an individual client account, a lawyer shall consider the amount of interest likely to be earned during the period the funds are expected to be deposited, as well as the estimated cost of establishing and administering a separate client fund account, including reasonably imputed overhead costs, and the estimated cost of preparing any tax or other reports required for interest accruing to a client's benefit.

IOLTA Guidelines A(2)(b).

**6.** In *Cone,* the court rejected an analogous argument. *See* 819 F.2d at 1007 n. 9.

**7.** Plaintiffs' reliance on *Webb's Fabulous Pharmacies* to support their "beneficial use" argument is unavailing. In that case, the Supreme Court held unconstitutional a Florida law that deemed as property of the state the interest that accrues on interpleader funds deposited with the state court. The interpleader statute required that, in order to avail oneself of that form of protection against creditors' claims, a party must deposit contested funds with the court. The state charged a fee for holding these funds, based on the amount of principal. By also retaining the interest on this principal, thus depriving the parties of the beneficial use of these funds for the period in which the funds were deposited in court, the state "exact[ed] two tolls" for the service. 449 U.S. at 159, 101 S.Ct. at 449. This, the Court held, was a deprivation of property without just compensation. In that case, unlike here, the plaintiffs had a property right in the interest created by the interpleaded fund. *Id.* at 162, 101 S.Ct. at 451.

speech are violated, because the Rule generates funds for designee organizations whose activities offend plaintiffs' political and ideological beliefs.

The First Amendment protects against "compelled speech" and "forced association." For example, "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977) (citing *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 645, 63 S.Ct. 1178, 1188, 87 L.Ed. 1628 (1943) (Murphy, J., concurring)). Similarly, " 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical.' " *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 234–35 n. 31, 97 S.Ct. 1782, 1799–1800 n. 31, 52 L.Ed.2d 261 (1977) (quoting Thomas Jefferson, in I. Brant, *James Madison: The Nationalist* 354 (1948)).

In order to assess whether plaintiffs state a claim under the doctrines embodied in these and other cases, it is necessary to determine, first, whether plaintiffs allege any compulsion by the mandate of the IOLTA program and second, whether they allege that the IOLTA program associates them with any "speech."

### A. *Compulsion*

The Supreme Court has had occasion to consider, primarily in the context of unions, the First Amendment claims of those who object to compelled membership and dues in an organization. In *Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 236–38, 76 S.Ct. 714, 720–22, 100 L.Ed. 1112 (1956), when faced with the contention that unions forced unwanted ideological and political associations on its members, the Court held that all employees in a bargaining unit could, as a condition of employment, be required to become members of a union. The justification for such compulsion was

that the union shop (one in which union membership was mandatory) was necessary to eliminate "free riders," employees who would benefit from the union without contributing financially to support its activities. *See International Ass'n of Machinists v. Street,* 367 U.S. 740, 761, 81 S.Ct. 1784, 1796, 6 L.Ed.2d 1141 (1961) (reviewing legislative history of Railway Labor Act). Although compelled financial support

> might well be thought ... to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, ... such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress.

*Abood,* 431 U.S. at 222, 97 S.Ct. at 1792.

This justification, however, is not limitless. For example, when unions engage in ideological or political activities unrelated to their status as collective bargaining agent its members may object on First Amendment grounds. *Id.* at 234, 97 S.Ct. at 1799. *See also Street,* 367 U.S. at 768–69, 81 S.Ct. at 1799–1800 (Railway Labor Act does not authorize union to spend exacted funds on political causes to which members object).[8]

The teaching of the cases involving unions has been applied, as well, to bar associations. In *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), a lawyer contended that he could not be compelled to join and financially support a bar association which expressed opinions on, and attempted to influence, legislation. Relying on *Hanson,* Justice Brennan rejected this claim, and held that such compulsion was justified by the state's interests in regulating the legal profession and in improving the quality of legal services. *Id.* 367 U.S. at 842–43, 81 S.Ct. at 1837–38 (plurality opinion). More recently, in *Keller v. State Bar of Cal.,* 496 U.S. 1, 12, 110

---

**8.** In *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984), the Court defined a test for determining which expenditures were properly chargeable to objecting union members: "whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues."

S.Ct. 2228, 2235, 110 L.Ed.2d 1 (1990), the Supreme Court, again recognizing the "substantial analogy" between an integrated bar association (one in which membership and dues are required as a condition of practicing law) and a union, held that activities germane to the goals of a bar association could be funded with mandatory dues. *Id.* at 13–14, 110 S.Ct. at 2235–2236.

■ The situation here is distinguishable from those cases where, as a condition of employment or participation, individuals were obliged[9] to join and finance groups whose activities they found objectionable. There is no such compulsion here. Lawyers have alternatives to IOLTA participation. In the first place, there is no requirement that they hold any client funds. On the other hand, if they choose to hold client funds, they may do so in individual client interest bearing accounts. It is only when client funds would be placed in a non-interest bearing account that the Rule requires they be deposited in an IOLTA.

This Court concludes, therefore, that the challenged Rule provides for choice, not compulsion.

### B. *Speech*

Plaintiffs' allegation that the Rule forces them to associate with offensive "speech" is also flawed. Courts have recognized such claims only when an identifiable ideological expression was imposed by association on the objectors.

The cases commonly find First Amendment "speech" in an organization's advancement of positions affecting matters of public debate. In *Keller,* 496 U.S. at 5–6 n. 2, 110 S.Ct. at 2231–32 n. 2, the defen-

dant bar association adopted resolutions expressing positions on such nonlegal, partisan issues as gun control and nuclear weapons. In *Lehnert v. Ferris Faculty Ass'n,* —— U.S. ——, —— – ——, 111 S.Ct. 1950, 1959–60, 114 L.Ed.2d 572 (1991) (plurality opinion), a union engaged in political lobbying outside the context of contract ratification and implementation. In *Schneider v. Colegio de Abogados de Puerto Rico,* 917 F.2d 620, 624 (1st Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992), a bar association used compulsory dues and fees to undertake partisan political activities, such as supporting the Sandinistas in Nicaragua, and opposing the draft. And in *Galda,* 772 F.2d at 1065, and *Carroll,* 957 F.2d at 994–95, state universities imposed fees on their students to support Public Interest Research Groups devoted to political and ideological objectives, such as a nuclear weapons freeze and a defense-spending cut.[10] In prohibiting coerced contributions to such partisan issues, courts recognize that the First Amendment mandates that the interchange of information and ideas be free from compulsion. *See Buckley v. Valeo,* 424 U.S. 1, 49, 96 S.Ct. 612, 649, 46 L.Ed.2d 659 (1976) (*per curiam* ) (citations omitted).

■ There is no ideology or suasion involved in the criteria by which the SJC Rule designates IOLTA recipients. Rather, the SJC Rule expresses a content-neutral commitment to utilize otherwise unproductive monies for legal assistance to the impoverished,[11] and for improving the administration of justice.

Plaintiffs, at oral argument, contended further that litigation is, by its nature, ideological, and that funding litigation is,

9. *Cf. Carroll v. Blinken,* 957 F.2d 991 (2d Cir. 1992) (students at state university improperly required, as a condition of registration, to pay a fee which supported Public Interest Research Group's off-campus activities); *Galda v. Rutgers,* 772 F.2d 1060 (3d Cir.1985), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1375, 89 L.Ed.2d 602 (1986) (same); *Kidwell v. Transportation Communications Int'l Union,* 946 F.2d 283, 299 (4th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992) (where union membership is not compelled, members have no First Amendment right to object to expenditures to which they are ideologically opposed); *Farrell v.*

*International Ass'n of Firefighters,* 781 F.Supp. 647, 648 (N.D.Cal.1992) (same).

10. *See also Cahill v. Public Serv. Comm'n,* 76 N.Y.2d 102, 109, 556 N.Y.S.2d 840, 556 N.E.2d 133, *cert. denied,* —— U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 309 (1990) (invalidating, on First Amendment grounds, state commission's policy allowing utilities to recover from ratepayers, as operating expenses, charitable contributions to politically and religiously active organizations).

11. The weakness of plaintiffs' argument that protected speech is involved in such legal repre-

therefore, tantamount to supporting an ideological interest. This court disagrees. It is true that, once undertaken, litigation may take on a political or ideological dimension. But the challenged Rule does not deal directly or indirectly with the substance of any litigation. Rather, it deals with the process of litigation, making access to the courts more readily available to those who need assistance. The Rule deals with opportunity, not ideology.

This court concludes, therefore, that speech, in the constitutional sense, is not a factor of the challenged SJC Rule.

An order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, defendants' Motion to Dismiss is hereby ALLOWED.

sentation is highlighted by the Court's recognition that lawyers could, as a condition of bar membership, be required to represent indigent clients. *Supreme Court of N.H. v. Piper,* 470 U.S. 274, 287, 105 S.Ct. 1272, 1280, 84 L.Ed.2d 205 (1985). *See also Mallard v. United States Dist. Court,* 490 U.S. 296, 310, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) ("in a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills *pro bono publico* is manifest"); *Keller,* 496 U.S. at 14, 110 S.Ct. at 2236 (improving the quality of the legal service available is a legitimate state interest) (quoting *Lathrop,* 367 U.S. at 843, 81 S.Ct. at 1838); *Arrow v. Dow,* 544 F.Supp. 458, 462–63 (D.N.M. 1982) (activities designed to make legal system more accessible are a legitimate state interest) (citing *Falk v. State Bar of Mich.,* 411 Mich. 63, 305 N.W.2d 201 (1981)). *Cf. Barnard v. Thorstenn,* 489 U.S. 546, 557, 109 S.Ct. 1294, 1301, 103 L.Ed.2d 559 (1989) (although Virgin Islands Bar can require attorney to represent indigent criminal defendant as a condition for practice, *unyielding* requirement of attorney's personal appearance is too burdensome on constitutionally protected privileges of nonresidents).