USCA1 Opinion

 

 June 3, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 92-1775 WASHINGTON LEGAL FOUNDATION, ET AL., Plaintiffs, Appellants, v. MASSACHUSETTS BAR FOUNDATION, ET AL., Defendants, Appellees. ____________ ERRATA SHEET The opinion of this court issued on May 20, 1993, is amended as follows: Page 4, lines 5-6 from bottom: Delete 1987 after 11th Cir. and add (1987) at end of citation: 484 U.S. 917 (1987). Page 5, line 13: Abbreviate Indiana to Ind. line 18: Change Assoc. to Ass'n footnote 1, line 2: Abbreviate Arkansas to Ark. line 3: Abbreviate Association to Ass'n line 5: Delete 1984 Page 11, footnote 4, line 9: change and add as follows: (1st Cir.), cert. denied, 494 U.S. 1082 (1990). _____ ______ Page 17, line 8: Abbreviate Educational to Educ. line 9: Abbreviate Foundation to Found. Page 22, line 18: Delete (1979) Page 24, line 3: Delete (1979) Page 36, footnote 15, line 3: add after ...newspaper), cert. _____ denied, 113 S. Ct. 1067 (1993); ______ line 10: add after ...organizations), cert. denied, 493 _____ ______ U.S. 1094 (1990); line 11: add after ...NJPIRG), cert. denied, 475 U.S. _____ ______ 1082 (1986); UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1775 WASHINGTON LEGAL FOUNDATION, ET AL., Plaintiffs, Appellants, v. MASSACHUSETTS BAR FOUNDATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Richard A. Samp, with whom Daniel J. Popeo, John C. Scully, and _______________ ________________ _______________ Francis C. Newton, Jr. were on brief, for appellants. ______________________ Allan van Gestel, with whom James C. Rehnquist, John C. __________________ _____________________ ________ Kissinger, Jr., and Goodwin Procter & Hoar were on brief, for _______________ _________________________ Massachusetts Bar Foundation, William W. Porter, Assistant Attorney _________________ General, and Scott Harshbarger, Attorney General, on brief for __________________ Massachusetts IOLTA Committee, Donald K. Stern, S. Tara Miller, and ________________ _______________ Hale and Dorr on brief for Boston Bar Foundation, Joseph L. Kociubes, _____________ __________________ Stephanie A. Kelly, Diane E. Cooley, and Bingham, Dana & Gould on __________________ ________________ ______________________ brief for Massachusetts Legal Assistance Corporation, appellees. William W. Porter, Assistant Attorney General, and Scott ____________________ _____ Harshbarger, Attorney General, on brief for The Chair of the ___________ Massachusetts Board of Bar Overseers, appellee. William W. Porter, Assistant Attorney General, and Scott ___________________ _____ Harshbarger, Attorney General, on brief for The Justices of the ___________ Massachusetts Supreme Judicial Court, appellees. Peter M. Siegel, Randall C. Berg, Jr., and Arthur J. England, ________________ ______________________ ___________________ Jr., and Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. on ___ __________________________________________________________ brief for Alabama Law Foundation, Inc., Alabama State Bar, Arkansas IOLTA Foundation, State Bar of Arizona, Arizona Bar Foundation, The State Bar of California, The Legal Services Trust Fund Commission of the State Bar of California, Colorado Bar Association, Colorado Lawyer Trust Account Foundation, Connecticut Bar Foundation, Connecticut Bar Association, Delaware Bar Foundation, Delaware State Bar Association, The Florida Bar, The Florida Bar Foundation, Georgia Bar Foundation, State Bar of Georgia, Hawaii Bar Foundation, Hawaii State Bar Association, Idaho Law Foundation, Inc., Idaho State Bar, Illinois State Bar Association, Lawyers Trust Fund of Illinois, The Iowa State Bar Association, Kansas Bar Foundation, Kentucky IOLTA Fund, Louisiana State Bar Association, Maine Bar Foundation, Maine State Bar Association, Maryland Legal Services Corporation, Maryland State Bar Association, Inc., State Bar of Michigan, Michigan State Bar Foundation, Inc., Minnesota Lawyer Trust Account Board, The Missouri Bar, Missouri Lawyer Trust Account Foundation, National Association of IOLTA Programs, Inc., National Legal Aid & Defender Association (NLADA), Nevada Law Foundation, New Hampshire Bar Association, New Hampshire Bar Foundation, New Jersey State Bar Association, New Jersey State Bar Foundation, The IOLTA Fund of the Bar of New Jersey, New Mexico Bar Foundation, New York State Bar Association, Interest on Lawyer Account Fund of the State of New York, North Carolina Bar Association, North Carolina State Bar Plan for Interest on Lawyers' Trust Accounts, State Bar Association of North Dakota, Ohio Legal Services Program of the Ohio Public Defender Commission, Oklahoma Bar Foundation, Inc., Oregon Law Foundation, Oregon State Bar, Pennsylvania Bar Association, Lawyer Trust Account Board [Pennsylvania], Philadelphia Bar Association, Rhode Island Bar Foundation, Seattle-King County Bar Association, South Carolina Bar, The South Carolina Bar Foundation, South Dakota Bar Foundation, Tennessee Bar Association, Tennessee Bar Foundation, Texas Equal Access to Justice Foundation, State Bar of Texas, Utah Bar Foundation, Utah State Bar, Vermont Bar Association, Vermont Bar Foundation, The Virginia Bar Association, Virginia Law Foundation, Virginia State Bar, Washington State Bar Association, Legal Foundation of Washington, West Virginia Bar Foundation, Inc., West Virginia State Bar, amici curiae. J. Michael McWilliams, Dennis A. Kaufman, and John H. Morrison on _____________________ _________________ ________________ brief for The American Bar Association, amicus curiae. Gerald B. Gallagher, on brief pro se, amicus curiae. ___________________ Kathleen McDonald O'Malley, Chief Counsel, Patrick A. Devine, ____________________________ __________________ Assistant Attorney General, Lee Fisher, Attorney General of Ohio, ___________ Winston Bryant, Attorney General of Arkansas, Richard Blumenthal, _______________ ___________________ Attorney General of Connecticut, Larry EchoHawk, Attorney General of ______________ Idaho, Roland W. Burris Attorney General of Illinois, Bonnie J. __________________ _________ Campbell, Attorney General of Iowa, Michael E. Carpenter, Attorney ________ _____________________ General of Maine, J. Joseph Curran, Jr., Attorney General of Maryland, _____________________ Hubert H. Humphrey, III, Attorney General of Minnesota, Mario J. _________________________ _________ Palumbo, Attorney General of West Virginia, Mike Moore, Attorney _______ __________ General of Mississippi, Frankie Sue Del Papa, Attorney General of ______________________ Nevada, Robert J. Del Tufo, Attorney General of New Jersey, Tom Udall, __________________ _________ Attorney General of New Mexico, Nicholas J. Spaeth, Attorney General __________________ of North Dakota, Earnest D. Preate, Jr., Attorney General of __________________________ Pennsylvania, Dan Morales, Attorney General of Texas, Jeffrey L. ____________ ___________ Amestoy, Attorney General of Vermont, Robert Abrams, Attorney General _______ _____________ of New York, Charles W. Burson, Attorney General of Tennessee, Ken __________________ ___ Eikenberry, Attorney General of Washington, and Mary Sue Terry, __________ ________________ Attorney General of Virginia, on brief for the States of Ohio, Arkansas, Connecticut, Idaho, Illinois, Iowa, Maine, Maryland, Minnesota, Mississippi, Nevada, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, Tennessee, Texas, Vermont, Washington, West Virginia, and Virginia, amici curiae. ____________________ May 20, 1993 ____________________ BOWNES, Senior Circuit Judge. This appeal involves BOWNES, Senior Circuit Judge ____________________ a challenge to the Massachusetts Interest on Lawyers' Trust Accounts ("IOLTA") program. The district court granted the defendants' motion to dismiss the plaintiffs' claims that the IOLTA program violated their First Amendment rights of freedom of speech and association, and effected a taking of their property in violation of the Fifth and Fourteenth Amendments. We affirm. I. I. BACKGROUND BACKGROUND __________ Traditionally, in Massachusetts and in other states, clients' funds which lawyers held for a short term or in nominal amounts were deposited into non-interest bearing pooled trust accounts. See, e.g., In Re Mass. Bar Ass'n, 478 ___ ____ _____________________ N.E.2d 715, 716 (Mass. 1985); In Re Minn. State Bar Ass'n, ____________________________ 332 N.W.2d 151, 155-56 (Minn. 1982). Banking laws and the ethical obligation of lawyers to maintain clients' funds so that they were immediately available for reimbursement prevented such pooled trust accounts from accruing interest. Cone v. State Bar of Fla., 819 F.2d 1002, 1005 (11th Cir.), ____ __________________ cert. denied, 484 U.S. 917 (1987). Interest earned by pooled _____ ______ trust accounts remained with the banking institution which held the funds. Id. With the advent of Negotiable Order of ___ Withdrawal ("NOW") accounts authorized by the Consumer Checking Account Equity Act, interest became available on -4- checking accounts for eligible depositors. Id. at 1005-06. ___ Eligible depositors include individual owners of deposited funds and certain charitable, non-profit or public interest entities including IOLTA programs. See id.; In Re N. H. Bar ___ ___ ________________ Ass'n, 453 A.2d 1258, 1259 (N.H. 1982). During the late _____ 1970's and through the 1980's, Florida and many other states proposed IOLTA programs and courts upheld the programs finding them constitutionally and ethically permissible.1 As of January, 1992, forty-nine states and the District of Columbia had authorized IOLTA programs. ABA/BNA Lawyers' Manual on Professional Conduct 45:202 (1992). Indiana remains the only state which has not adopted an IOLTA program. Id.; In Re Public Law No. 154-1990, 561 N.E.2d 791 ___ _____________________________ (Ind. 1990); In Re Ind. State Bar, 550 N.E.2d 311 (Ind. ______________________ 1990). The Massachusetts IOLTA program was established by amendment to Canon 9, DR 9-102 of Rule 3:07 of the Rules of the Supreme Judicial Court, effective September 1, 1985, the "IOLTA Rule." Mass. Bar Ass'n, 478 N.E.2d at 720-21. From _______________ 1985 until 1990, the IOLTA program operated as a voluntary ____________________ 1 See, e.g., Cone, 819 F.2d 1002; In Re Interest on Trust ___ ____ ____ _______________________ Accounts, 402 So.2d 389 (Fla. 1981); In Re Ark. Bar Ass'n, ________ _____________________ 738 S.W.2d 803 (Ark. 1987); Mass. Bar Ass'n, 478 N.E.2d 715; _______________ Carroll v. State Bar of California, 213 Cal. Rptr. 305 (4th _______ ________________________ Dist.), cert. denied sub nom. Chapman v. State Bar of Calif., _____ ______ ___ ____ _______ ___________________ 474 U.S. 848 (1985); In Re Interest on Lawyers' Trust ____________________________________ Accounts, 672 P.2d 406 (Utah 1983); N. H. Bar Ass'n, 453 A.2d ________ _______________ 1258; Minn. State Bar Ass'n, 332 N.W.2d 151. _____________________ -5- system. Attorneys could elect to participate by establishing an interest-bearing IOLTA account and by complying with DR 9- 102(C) requirements which included choosing a recipient charity from a group designated by the IOLTA Committee. In 1989, the Massachusetts Supreme Judicial Court ("SJC") converted the voluntary IOLTA program into a mandatory program by amending the IOLTA Rule, effective January 1, 1990. As amended, the rule required all Massachusetts lawyers to deposit client funds into interest bearing accounts: either (1) a pooled IOLTA account if, in the judgment of the lawyer, the deposits were nominal in amount or to be held for only a short period of time; or (2) individual accounts for all other client funds. The Rule required lawyers or law firms to direct the banks holding their IOLTA accounts to disburse accrued interest to a charitable entity selected by the lawyer or firm from a group designated by the SJC. The designated charities were Massachusetts Legal Assistance, the Massachusetts Bar Foundation, and the Boston Bar Foundation. The SJC again amended the IOLTA Rule, effective January 1, 1993, to change the process for disbursement of IOLTA funds.2 The IOLTA Rule now vests responsibility for ____________________ 2 The Massachusetts Supreme Judicial Court amended Rule 3:07, DR 9-102(C) by Order 92-18, effective January 1, 1993. A copy of DR 9-102 and the amendment appear in the appendix following this opinion. -6- disbursement of IOLTA funds in the IOLTA Committee and eliminates choice by lawyers of recipient eligible charities. The IOLTA Committee must disburse sixty-seven percent of all IOLTA funds to Massachusetts Legal Assistance and the remaining thirty-three percent to "other designated charitable entities." The parties have not briefed or argued any issues in the context of the 1993 amendment to the IOLTA Rule.3 Although the amendment of the IOLTA Rule affects the process of funds disbursement, the changes are not material to this decision. None of the parties argued that the lawyers' choice of recipient charities, as provided by the 1990 version of the IOLTA Rule, was significant. The funds are still disbursed primarily to Massachusetts Legal Assistance with the remainder to "other designated eligible charities" which are still the Massachusetts Bar Foundation and the Boston Bar Foundation. In addition, the mission of IOLTA funds remains the same: "The Massachusetts Legal Assistance Corporation may use IOLTA funds to further its corporate purpose and other designated charitable entitles [sic] may use IOLTA funds either for (1) improving the administration of justice or (2) delivering civil legal services to those who cannot afford them." Mass. Sup. J. C. R. 3:07, DR 9- ____________________ 3 The Massachusetts Attorney General's Office sent this court a copy of the amendment to DR 9-102(C) by letter dated February 12, 1993. -7- 102(C), as amended by Order 92-18, effective Jan. 1, 1993. __ _______ __ The corporate purpose of the Massachusetts Legal Assistance Corporation is to provid[e] financial support for legal assistance programs that provide representation to persons financially unable to afford such assistance in proceedings or matters other than criminal proceedings or matters, except those proceedings or matters in which the commonwealth is required to provide representation. Mass. Gen. L. ch. 221A, 2 (West Supp. 1992). Unless further designation is necessary for clarity, we will refer to the currently effective Massachusetts Supreme Judicial Court Rule 3:07, DR 9-102(C) as "DR 9-102(C)" or the "IOLTA Rule." A. The Plaintiffs' Claims ______________________ There are five plaintiffs in this action. The Washington Legal Foundation ("WLF") is a non-profit, public interest law and policy center operating in Washington, D.C. Karen Parker is a citizen of Massachusetts who has employed lawyers in connection with her real estate business and other businesses, which has resulted in her money being deposited in IOLTA accounts. Stephanie Davis is a citizen of Massachusetts who has not had her money placed in IOLTA accounts, but she anticipates that, in the future, she may need to hire an attorney which would cause her money to be deposited in an IOLTA account. William R. Tuttle is an -8- attorney practicing in Abington, Massachusetts, without an IOLTA account. Timothy J. Howes is an attorney in Springfield, Massachusetts, where he maintains an IOLTA account in the Shawmut Bank. Howes is suing on behalf of himself and on behalf of his clients whose funds are deposited in his IOLTA account. The defendants are the Massachusetts Bar Foundation, the Boston Bar Foundation, the Massachusetts Legal Assistance Corporation, Katherine S. McHugh (in her capacity as chair of the Massachusetts IOLTA Committee), Fran F. Burns (in his capacity as chair of the Board of Bar Overseers), and the Justices of the Supreme Judicial Court of Massachusetts. The plaintiffs allege, pursuant to 42 U.S.C. 1983, that they have been deprived, under color of state law, of their rights secured by the First, Fifth and Fourteenth Amendments of the Constitution by operation of the Massachusetts IOLTA program. 1. Count One: First and _________________________ Fourteenth Amendments _____________________ WLF alleges that it sent a check to cover costs and expenses related to this legal action to a Massachusetts attorney (not a party to the action) who deposited the check in his IOLTA account as required by the IOLTA Rule. Parker alleges that she has and will continue to use lawyers in connection with her real estate business and that her funds -9- deposited with lawyers have and will be deposited in IOLTA accounts. WLF and Parker allege that: The collection of and use of interest, under color of state law, generated from the IOLTA trust account of [their attorneys] for litigation, especially for litigation that involves political or ideological causes, and for legislative or other forms of lobbying, deprive [them] of their rights to freedom of speech and association guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. Davis alleges that although she has not yet had money deposited in an IOLTA, the IOLTA Rule creates "the risk that she will be forced to choose between employing an attorney or financially supporting organizations with which she disagrees." Davis alleges her constitutional claims in substantially similar terms to those quoted above. Attorney Howes alleges that he has had to deposit client funds in his IOLTA as required by the IOLTA Rule and that the Rule "forces [him] to choose between not practicing law and or [sic] practicing law and associating with organizations whose actions offend his political and ideological beliefs and thereby depriving him of his right to freedom of speech and association as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Finally, Attorney Tuttle alleges that the IOLTA Rule has forced him "to forego, to his professional and financial detriment, depositing certain client funds into non-interest bearing accounts in -10- order to avoid associating with organizations whose actions offend his political and ideological beliefs" thereby depriving him of the same constitutional rights as alleged by Attorney Howes. In summary, Count I alleges violation of the plaintiffs' rights of freedom of speech and association. -11- 2. Count Two: Fifth and Fourteenth Amendments ___________________________________________ Plaintiffs WLF and Parker allege that the IOLTA Rule constitutes an illegal taking of the beneficial use of their funds for public use without just compensation and without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution.4 Howes makes the same claim on behalf of his clients whose funds he has deposited into his IOLTA account. Neither Davis, Howes (on his own behalf) nor Tuttle make claims under Count II. 3. Relief Requested ________________ The plaintiffs ask for declaratory and injunctive relief to dismantle the operation of the mandatory IOLTA program. Specifically, the plaintiffs request that the court: (1) require the defendants to refund the interest which has been earned on their funds while in IOLTA accounts; (2) declare the IOLTA Rule void as an unconstitutional violation of the plaintiffs' First, Fifth and Fourteenth ____________________ 4 The plaintiffs have not pursued their claims alleged in Count III based on the Fourteenth Amendment that the IOLTA program has unconstitutionally deprived them of their property without due process of law. The plaintiffs' statement of issues on appeal is limited to the constitutional rights of the plaintiffs under the First and Fifth Amendments. Therefore, we assume that the plaintiffs' claims under the Fourteenth Amendment have been abandoned and are waived. United States v. Zannino, 895 F.2d 1, 17 (1st ______________ _______ Cir.) cert. denied, 494 U.S. 1082 (1990). Of course, the _____ ______ Fourteenth Amendment is properly included in each count as the basis upon which the First and Fifth Amendment prohibitions apply to the states. -12- Amendment rights; (3) issue permanent injunctions prohibiting the defendants from requiring attorneys to comply with the IOLTA Rule and from disciplining attorneys for failure to comply with the IOLTA Rule; (4) issue a permanent injunction directing the SJC to require attorneys to make full disclosure to their clients of uses of IOLTA funds if the attorney elects to participate in IOLTA, and (5) grant reasonable attorneys fees to the plaintiffs pursuant to 42 U.S.C. 1988. B. Dismissal of Claims ___________________ The defendants moved to dismiss the plaintiffs' action on the grounds that their constitutional claims lacked merit and that some of the plaintiffs lacked standing.5 The district court found that there was no serious dispute that at least two of the plaintiffs, Parker and Howes, had standing to bring their constitutional claims. The district court dismissed the plaintiffs' claims holding "that the plaintiffs have no property interest in the funds subject to ____________________ 5 On appeal, the record includes only the defendants' bare motion to dismiss which states the grounds as lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The district court summarized the defendants' grounds for the motion to dismiss: "In addition to arguing that the plaintiffs' constitutional challenges are without merit, the defendants contend that two plaintiffs lack standing." Washington Legal Found., 795 F. Supp. at 52, _______________________ n.3. We assume, therefore, that the defendants' assertion of lack of subject matter jurisdiction referred to lack of standing. -13- the SJC Rule," and that the SJC Rule did not compel association with speech and "speech, in the constitutional sense, is not a factor of the challenged SJC Rule." Washington Legal Found., 795 F. Supp. 50, 53, 56 (D. Mass. ________________________ 1992). The plaintiffs appeal the district court's dismissal of their claims. C. Standard of Review __________________ Our standard of review of a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is well established. We begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the appellants. Coyne v. _____ City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). ___________________ Because a dismissal terminates an action at the earliest stages of litigation without a developed factual basis for decision, we must carefully balance the rule of simplified civil pleading against our need for more than conclusory allegations. Dewey v. University of New Hampshire, 694 F.2d _____ ___________________________ 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983). _____ ______ Because only well-pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law. United States v. AVX Corp., 962 F.2d _____________ _________ 108, 115 (1st Cir. 1992) ("a reviewing court is obliged neither to 'credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,'... nor to honor subjective characterizations, -14- optimistic predictions, or problematic suppositions." (citations omitted)). We may affirm the district court's order on any independently sufficient grounds. Willhauck v. _________ Halpin, 953 F.2d 689, 704 (1st Cir. 1991). ______ D. Standing ________ The issue of standing has not been raised by the parties on appeal, and therefore we address standing only because it presents a threshold jurisdictional question. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 ______ _______________________________ (1986) ("every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." (citations omitted)); Warth v. Seldin, 422 U.S. _____ ______ 490, 498 (1975) ("[Standing] is the threshold question in every federal case, determining the power of the court to entertain the suit."). Standing requirements are most strictly enforced in cases involving constitutional questions. Bender, 475 U.S. at 541-42. ______ The standing doctrine is derived from Article III of the Constitution which requires the existence of a "case or controversy" before a claim may be resolved by judicial process. Allen v. Wright, 468 U.S. 737, 750 (1984). To show _____ ______ a case or controversy, a plaintiff must first "clearly -15- demonstrate that he has suffered an 'injury in fact[]'" which means "an injury to himself that is 'distinct and palpable,'... as opposed to merely '[a]bstract,' ... and the alleged harm must be actual or imminent, not 'conjectural' or hypothetical.'" Whitmore v. Arkansas, 495 U.S. 149, 155 ________ ________ (1990) (citations omitted). Second, the claimant must allege facts which show "that the injury 'fairly can be traced to the challenged action' and, third, 'is likely to be redressed by a favorable decision.'" Id. (quoting Simon v. Eastern ___ _____ _______ Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 41 ______________________________________ (1976) and Valley Forge Christian College v. Americans United ______________________________ ________________ for Separation of Church and State, Inc., 454 U.S. 464, 472 _________________________________________ (1982); see also Rumford Pharmacy v. City of East Providence, ___ ____ ________________ _______________________ 970 F.2d 996, 1001 (1st Cir. 1992); AVX Corp., 962 F.2d at _________ 113. Our standing inquiry depends on whether the plaintiffs have established the existence of a case or controversy as to each of their claims, but does not involve the merits of particular claims. Warth, 422 U.S. at 500. _____ The district court found that at least Howes and Parker had standing to bring the constitutional challenges in this case. Karen Parker alleges that she has and will continue to employ lawyers for transactions related to her business and that she has and will have her funds placed in IOLTA accounts by the lawyers she employs. She claims that the IOLTA program collects and uses for political and -16- ideological causes interest generated by her funds placed in IOLTA accounts, and therefore the operation of the IOLTA program deprives her of freedom of speech and association in violation of the First Amendment. Parker also claims that the IOLTA program constitutes an illegal taking of the beneficial use of her funds deposited in IOLTA accounts in violation of the Fifth Amendment. She asks this court to declare the IOLTA Rule unconstitutional and to enjoin the operation of the rule. Based upon her allegations, which we take as true for this purpose, she has stated an actual injury to herself which is traceable to the IOLTA rule and which may be remedied by the relief sought. We agree with the district court that Parker has standing to maintain her claims made in this action. Howes presents a more complex standing situation. Howes brings the First Amendment claim on his own behalf and on behalf of his clients, and the Fifth Amendment claim only on behalf of his clients.6 As to the First Amendment claim ____________________ 6 Howes' standing on behalf of third parties is more difficult. The general rule is that a plaintiff has standing to assert only his own rights, not those of third parties. Playboy Enterprises, Inc. v. Public Service Comm'n, 906 F.2d _________________________ _____________________ 25, 36-37 (1st Cir.), cert. denied, sub nom. Rivera Cruz v. _____ ______ ___ ____ ____________ Playboy Enterprises, Inc., 498 U.S. 959 (1990). An exception _________________________ to the rule against jus tertii standing exists if other ___ ______ considerations, such as the representative's relationship with the third party and the opportunity of the third party to assert its own rights, overcome prudential concerns. Id. ___ at 37. We do not address the third party standing issue, however, because it is unnecessary for our limited purpose of determining jurisdiction. -17- on his own behalf, Howes alleges that he has been compelled by the IOLTA Rule to participate in the IOLTA program and thereby to associate with IOLTA funded organizations which offend his political and ideological beliefs. Howes also alleges that the operation of the IOLTA Rule forces him to choose between practicing law and not practicing law. He asks for the same relief requested by Parker. Without addressing the merits of Howes' personal claims, we find that he has alleged an injury which may be remedied by the requested relief which is sufficient to establish his standing to maintain his First Amendment claim. Because we find that at least two of the plaintiffs, Parker, a client, and Howes, a lawyer, have standing to maintain each claim, we need not address the standing of all plaintiffs as to each claim. Watt v. Energy ____ ______ Action Educ. Found., 454 U.S. 151, 160 (1981); Buckley v. ____________________ _______ Valeo, 424 U.S. 1, 12 (1976) (finding appellants had standing _____ because "at least some of the appellants have a sufficient 'personal stake' in a determination of the constitutional validity of each of the challenged provisions to present 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character'" (citation and footnote omitted)). We find, therefore, that based on Parker's and Howes' standing, we have jurisdiction in this case. -18- II. II. ANALYSIS ANALYSIS ________ The plaintiffs7 allege that the Massachusetts IOLTA program violates their First Amendment rights by collecting the interest generated by clients' funds which are deposited in IOLTA accounts and distributing the money to designated organizations. The plaintiffs further allege that the recipient organizations use the money for litigation involving political or ideological causes and for lobbying. The IOLTA program, the plaintiffs allege, therefore compels them to support political and ideological causes depriving them of freedom of speech and association. The plaintiffs also allege that the IOLTA program's appropriation of interest from lawyers' trust accounts takes the beneficial use of client funds which constitutes an unconstitutional taking in violation of the Fifth and Fourteenth Amendments.8 A. The Fifth Amendment Taking Claim ________________________________ ____________________ 7 As noted above, all of the plaintiffs do not join in all counts of the complaint. In addition, we have not resolved the standing of all plaintiffs. "Plaintiffs" as used throughout this opinion will refer to the particular plaintiffs making the claims discussed without resolving standing. 8 We address the plaintiffs' Fifth Amendment claim first, although it is raised in Count II of the plaintiffs' complaint, in order to resolve the plaintiffs' property rights to funds deposited in IOLTA accounts before discussing the First Amendment claim which also involves that issue. -19- The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." There is no dispute that clients' money or property held by lawyers belongs to the clients and must be returned to the clients at their request. Mass. S. J. C. Rule 3:07, Cannon 9, DR 9-102(B)(4); Mass. Gen. L. Ann. ch. 221, 51 (1986). Many courts, including the Supreme Judicial Court of Massachusetts, have held that clients do not have a constitutionally protected property right to the interest earned on IOLTA accounts.9 Mass. Bar Ass'n, 478 ________________ N.E.2d at 718; see also Cone, 819 F.2d at 1007; Carroll, 213 ___ ____ ____ _______ Cal. Rptr. at 312; Minn. State Bar Ass'n, 332 N.W.2d at 158; _____________________ N. H. Bar Ass'n, 453 A.2d at 1260-61. Perhaps in response, _______________ the plaintiffs have eschewed a right to the interest itself, and instead claim a property right to the beneficial use of their deposited funds, and more specifically, the right to control and to exclude others from the beneficial use of those funds. To make a cognizable claim of a taking in violation of the Fifth Amendment, the plaintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment. Penn Cent. Transp. Co. v. ______________________ ____________________ 9 We accept as true, as do all of the parties, the assumption that there are no feasible accounting procedures which would allow individual client funds deposited into pooled accounts to earn net interest. -20- New York City, 438 U.S. 104, 124-25 (1978). The plaintiffs _____________ must point to credible sources for their claimed property interest: Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). ___________________ ____ Intangible property rights, "'the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it[,]'" which are recognized by state law are protected by the Takings Clause. Ruckelshaus ___________ v. Monsanto Co., 467 U.S. 986, 1003 (1984) (quoting United _____________ ______ States v. General Motors Corp., 323 U.S. 373, 377-78 (1945)); ______ ____________________ see also Bowen v. Gilliard, 483 U.S. 587, 603-09 (1987) ___ ____ _____ ________ (finding no unconstitutional taking of child's right to have support payments used for child's best interest by an amendment to the AFDC statute). Not all asserted property interests are constitutionally protected, however, as "a mere unilateral expectation or an abstract need is not a property interest entitled to protection." Webb's Fabulous _________________ Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980). ________________ ________ 1. Beneficial Use of Deposited Funds _________________________________ -21- The plaintiffs rely on trust law to establish their right to control the beneficial use of their funds as a protected property interest. IOLTA deposits do not require a trust agreement and the plaintiffs have not argued that formal trust agreements exist. Rather, the plaintiffs contend that because the acronym "IOLTA" includes the word "trust," a trust relationship is created between lawyer and client when client funds are deposited into IOLTA accounts. The relationship between lawyer and client in Massachusetts is fiduciary as a matter of law. Markell v. Sidney B. _______ _________ Pfeifer Found., Inc., 402 N.E.2d 76, 94 (Mass. App. 1980). _____________________ The lawyer-client relationship presumes that the client trusts the lawyer to handle the client's funds appropriately and the lawyer assumes the fiduciary obligation subject to the regulation of the profession. We are not convinced that the deposit of clients' funds into IOLTA accounts transforms a lawyer's fiduciary obligation to clients into a formal trust with the reserved right by the client to control the beneficial use of the funds as claimed by the plaintiffs. The plaintiffs also claim that they have a protected property right to exclude others from the beneficial use of their funds while they are deposited in IOLTA accounts. In support of the right to exclude, the plaintiffs rely on cases which have established that property owners have a right to exclude others from their real -22- property. See, e.g., Kaiser Aetna v. United States, 444 ___ ____ ____________ _____________ U.S. 164, 176; Loretto v. Teleprompter Manhattan CATV Corp., _______ _________________________________ 458 U.S. 419, 435-36 (1982). The plaintiffs have cited no sources which recognize a similar constitutionally protected property right to control or exclude others from intangible property and we have found none.10 2. IOLTA Program Does Not Cause a Taking _____________________________________ Assuming arguendo that the plaintiffs could ________ establish their claimed property interests in the beneficial use of their funds subject to the IOLTA Rule, the IOLTA program does not cause an illegal taking of those interests. The analysis of Fifth Amendment takings claims has evolved through a series of cases in which Supreme Court decisions "engaging in ... essentially ad hoc, factual inquiries ... have identified several factors that have particular significance." Penn Central, 438 U.S. at 124. The Court has ____________ repeatedly used the significant factors enunciated in Penn ____ Central to analyze takings claims: "(1) 'the economic impact _______ of the regulation on the claimant'; (2) 'the extent to which ____________________ 10 The plaintiff has not discussed, and we do not find analogous, intangible property rights which, by their nature or by agreement, require the exclusion of others to preserve the property interest. See, e.g., Monsanto, Co., 467 U.S. at ___ ____ _____________ 1002 ("Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others."). -23- the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.'" Connolly v. Pension Benefit Guaranty Corp., 475 ________ ______________________________ U.S. 211, 225 (1986) (citation omitted); see also Hodel v. ___ ____ _____ Irving, 481 U.S. 704, 714-15 (1987); Kaiser, 444 U.S. at 175. ______ ______ The government may impose regulations to adjust rights and economic interests among people for the public good, as long as the government does not force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, _________ _____________ 364 U.S. 40, 49 (1960); see also Andrus v. Allard, 444 U.S. ___ ____ ______ ______ 51, 65 (1979). a. Character of governmental action. _________________________________ The plaintiffs claim that the character of governmental action, through the IOLTA Rule, is a physical invasion of their beneficial interests in their funds held in IOLTA accounts. The physical invasion occurs, the plaintiffs argue, because the IOLTA program borrows the principal to generate income by collecting the interest earned on IOLTA accounts. The plaintiffs do not claim that they have any rights to the interest, rather they assert the right to control who uses and benefits from the principal which generates the interest. The IOLTA program, the plaintiffs -24- claim, "involves a permanent physical invasion of the funds" while they are held in IOLTA accounts. The Supreme Court has recognized that a taking is more obvious when the governmental action can be characterized as a physical invasion. Penn Central, 438 U.S. ____________ at 124. The Court has identified particular governmental action as categorical or per se takings which generally ___ __ occur: (1) when government action compels property owners to acquiesce in permanent physical invasion or occupation of their private property, and (2) when "regulation denies all economically beneficial or productive use of land." Lucas _____ v. South Carolina Coastal Council, 112 S. Ct. 2886, 2893 _______________________________ (1992); see also Yee v. City of Escondido, Cal., 112 S. Ct. ___ ____ ___ _______________________ 1522, 1526 (1992). The plaintiffs argue that the IOLTA program causes a physical taking similar to the takings found in Kaiser, 444 ______ U.S. 164 (1979); Loretto, 458 U.S. 419; and Webb's, 449 U.S. _______ ______ 155. In Kaiser, owners of a private marina, who had ______ connected their private pond to the Pacific Ocean, challenged the federal government's imposition of a navigational servitude on their property requiring that they allow a right of access to the public. The Court found that the government's regulation of the marina amounted to a physical invasion of their private property by the public, and was, therefore, an unconstitutional taking of the marina owners' -25- right to exclude others from their private property. Kaiser, ______ 444 U.S. at 180. In Loretto, 458 U.S. 419, government regulation _______ required private property owners to allow conduits for cable television to be attached to their buildings even when the property owners did not subscribe to cable television. The Court found that the regulation authorized a physical occupation, however small, of the plaintiff's private property which was unconstitutional without compensation. We find no logical analogy between the physical invasion of real property, as in Kaiser and Loretto, and the ______ _______ operation of the IOLTA Rule. The plaintiffs' takings claim involves intangible property rights not real property. To bolster their claim of physical invasion, the plaintiffs contend that their property rights are nearly identical to the claimants' property rights in Webb's, 449 U.S. 155, in ______ which the Court stated "the [government's] appropriation of the beneficial use of the fund is analogous to the appropriation of the use of private property." Id. at 163- ___ 64. In Webb's, 449 U.S. 155, the Supreme Court struck ______ down, as an unconstitutional violation of the Fifth Amendment Takings Clause, a Florida statute which required county clerks to deposit interpleaded funds in interest bearing accounts and retain the accrued interest. Another Florida -26- statute provided for a separate fee to be paid to the county registry for holding interpleaded funds. The Court first determined that claimants of the interpleaded funds had a property right to the deposited funds. Webb's, 449 U.S. at ______ 161-62. Applying the general rule that interest follows the principal, the Court held that the claimants had a property right to the interest accrued on the interpleaded funds. Id. ___ The Court concluded that there was not sufficient justification for the county to take the interest on interpleaded funds, which was the private property of the claimants, when the county registries were receiving fees for the costs related to holding the interpleaded funds. Id. at ___ 164-65. Despite the some superficial similarities between Webb's and this case, there is a fundamental difference. In ______ Webb's, the Court found that the claimants to the ______ interpleaded fund had a recognized property right to the interest earned while the funds were held by the county registries. In this case, the plaintiffs do not have a property right to the interest earned on their funds held in IOLTA accounts. See Cone, 819 F.2d at 1006-07 (holding that ___ ____ plaintiffs had no right to interest earned on IOLTA accounts and discussing implications of Webb's). In fact, the ______ plaintiffs recognize this and claim only the intangible rights related to the beneficial use of deposited funds: the -27- right to control and exclude others. The property rights of the plaintiffs here and the claimants in Webb's, therefore, ______ are different. The Webb's claimants had property rights to ______ accrued interest which is tangible personal property, while plaintiffs in this case have claimed only intangible property interests. The IOLTA program does not occupy or invade the plaintiffs' property even temporarily: the IOLTA program leaves the deposited funds untouched, the funds are always available to clients as required by DR 9-102(B)(4), and the interest earned on IOLTA accounts is not the plaintiffs' property. The property rights claimed by the plaintiffs are intangible. We find no logical or legal support for the plaintiffs' claim that the IOLTA program has caused a physical invasion and occupation of their intangible property rights. b. Economic interference. ______________________ Governmental action through regulation of the use of private property does not cause a taking unless the interference is significant. Andrus, 444 U.S. at 66-67. ______ Having found no weight to the plaintiffs' argument that governmental action through the IOLTA Rule has effected a physical invasion of their property rights, we consider the economic factors which are significant to a takings claim the economic impact of the IOLTA Rule on the plaintiffs, and "'the extent to which the regulation has interfered with -28- distinct investment-backed expectations.'" Connolly, 475 ________ U.S. at 225 (citations omitted). The property rights claimed by the plaintiffs do not involve clients' economic interests. The claimed right to control and to exclude others from the beneficial use of funds held by lawyers has no economic benefit for the plaintiffs because clients would not otherwise be entitled to the interest earned on pooled accounts. Plaintiffs do not claim and there are no "investment-backed" expectations in the claimed rights of clients to control and exclude others from the beneficial use of deposited funds under these circumstances. In sum, the plaintiffs claim, at best, a thin strand in the commonly recognized bundle of property rights. Under the IOLTA Rule, the plaintiffs retain the right to possess, use and dispose of the principal sum deposited in IOLTA accounts. "At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." Andrus, 444 U.S. at 65-66. ______ Weighing the plaintiffs' claimed property rights against the bundle of rights remaining in their deposited funds left untouched by the IOLTA program, we find that the IOLTA Rule has not caused a taking of plaintiff's property. -29- Consequently, we need not weigh any burden caused by taking private rights against the public benefit. We affirm, albeit on different grounds, the district court's dismissal of Count Two of the plaintiffs' complaint. B. The First Amendment Speech and Association Claim ________________________________________________ The plaintiffs claim that the IOLTA Rule compels lawyers, and therefore clients, to participate in the IOLTA program and thereby support lobbying and litigation for ideological and political causes. They contend that the IOLTA Rule violates their First Amendment rights of freedom of speech and association. The district court dismissed the plaintiffs' First Amendment claims on the grounds that (1) the IOLTA Rule did not compel the plaintiffs' participation in the IOLTA program, and (2) the IOLTA Rule did not involve constitutionally protected speech. We agree that the plaintiffs' First Amendment claim was properly dismissed. The First Amendment protects the right not to speak or associate, as well as the right to speak and associate freely.11 Roberts v. United States Jaycees, 468 U.S. 609, _______ ______________________ ____________________ 11 The First Amendment provides: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of -30- 623 (1984); Wooley v. Maynard, 430 U.S. 705, 714 (1977); West ______ _______ ____ Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 633 (1943). ______________________ ________ The Supreme Court has established that "[t]he right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" Wooley, 430 U.S. at 714 (quoting Barnette, 319 U.S. ______ ________ at 637). The most obvious infringement on First Amendment rights in the context of compelled speech occurs when individuals are forced to make a direct affirmation of belief. See, e.g., Barnette, 319 U.S. at 633 ("the ___ ____ ________ compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind"); Wooley, 430 U.S. at 715 ______ ("New Hampshire's statute in effect requires that appellees use their private property as a 'mobile billboard' for the State's ideological message"); Pacific Gas & Elec. Co. v. _________________________ Public Util. Comm'n, 475 U.S. 1, 17-18 (1986) ("the ______________________ [California Public Utilities] Commission's order requires [Pacific Gas Company] to use its property the billing envelopes to distribute the message of another."). The IOLTA Rule does not compel the plaintiffs to display, affirm or distribute ideologies or expression allegedly advocated by ____________________ grievances. -31- the IOLTA program or its recipient organizations. Direct compelled speech, therefore, is not an issue in this case. Compelled support of an organization engaging in expressive activities may also burden First Amendment rights. In a series of cases, the Supreme Court has examined the First Amendment implications raised by compelled financial support of unions and bar associations which engage in political or ideological activities. See, e.g., Keller v. ___ ____ ______ State Bar of Cal., 496 U.S. 1 (1990); Lehnert v. Ferris __________________ _______ ______ Faculty Ass'n, 111 S. Ct. 1950 (1991); Chicago Teachers ______________ _________________ Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292 ___________________________________ ______ (1986); Ellis v. Railway Clerks, 466 U.S. 435 (1984); Abood _____ ______________ _____ v. Detroit Board of Educ., 431 U.S. 209 (1977); Railway ________________________ _______ Clerks v. Allen, 373 U.S. 113 (1963); Machinists v. Street, ______ _____ __________ ______ 367 U.S. 740 (1961); Lathrop v. Donohue, 367 U.S. 820 _______ _______ (1961); Railway Employees Dept. v. Hanson, 351 U.S. 225 ________________________ ______ (1956). The Court found that compelled financial support of these organizations implicates First Amendment rights when the funds were used to subsidize ideological or political activities. In our analysis of the plaintiffs' First Amendment claims, we must first determine whether the IOLTA Rule burdens protected speech by forcing expression through compelled support of organizations espousing ideologies or engaging in political activities. If so, we will then -32- strictly scrutinize the IOLTA program to determine whether the IOLTA Rule serves compelling state interests through means which are narrowly tailored and germane to the state interests. See Austin v. Mich. Chamber of Commerce, 110 S. ___ ______ _________________________ Ct. 1391, 1396 (1990); Pacific Gas & Elec. Co., 475 U.S. at _______________________ 19; Abood, 431 U.S. at 235. _____ 1. Is the IOLTA Rule Compulsory? _____________________________ The district court concluded that the IOLTA Rule was not compulsory because lawyers could avoid establishing IOLTA accounts by choosing not to hold client funds or by establishing individual client accounts. Washington Legal ________________ Found., 795 F. Supp. at 55. On appeal, the plaintiffs argue ______ that the district court erred in not finding the IOLTA Rule compulsory as to them. Interpretation of a state disciplinary rule of professional conduct is a question of law which we review under the de novo standard. In Re __ ____ ______ Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992); see _____________________ ___ also Salve Regina College v. Russell, 111 S. Ct. 1217, 1225 ____ ____________________ _______ (1991) (holding that district courts are not entitled to deference on review of determinations of state law). Reviewing a dismissal, we apply the law to the facts alleged in the complaint and taken as true. AVX Corp., 962 F.2d at _________ 115. The IOLTA Rule obligates lawyers to deposit client funds which they hold for short terms or in minimal amounts -33- into IOLTA accounts. The plaintiffs allege facts which, when taken as true, establish that avoiding the IOLTA Rule has significantly limited Attorney Tuttle's practice of law and negatively affected his livelihood.12 Attorney Howes alleges that he has had to comply with IOLTA to maintain his practice of law despite his belief that the IOLTA Rule compels him to support politics and ideologies with which he disagrees. Claimants cannot be required by government action to relinquish First Amendment rights as a condition of retaining employment. Keller, 496 U.S. at 10. As alleged by ______ the plaintiffs, the burden on Tuttle and Howes of avoiding the IOLTA Rule is more than an inconvenience, although it is less extreme than forcing loss of employment. See Austin, ___ ______ 110 S. Ct. at 1399 (recognizing that "less extreme disincentives than the loss of employment" can force association affecting First Amendment rights). Reviewing the dismissal of their claims, we take the plaintiffs' factual allegations as true and we draw the inference in their favor that they cannot engage in the full practice of law without holding client funds which would trigger compliance with the ____________________ 12 We express no opinion concerning whether the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, requires lawyers to use IOLTA accounts as alleged by the plaintiffs. Because the allegation requires a legal conclusion, it is not an allegation of fact and is not taken as true for purposes of reviewing the dismissal of the plaintiffs' suit. -34- IOLTA Rule.13 Therefore, based on the stated assumptions and inference, the IOLTA Rule is compulsory as to the two plaintiffs who are lawyers for purposes of deciding this case. A different question is presented as to the compulsory effect of the IOLTA Rule on plaintiffs who are clients. Although the IOLTA Rule does not directly regulate clients, its effect is compulsory because lawyers generally deposit appropriate funds from clients into IOLTA accounts without the knowledge or consent of their clients. ____________________ 13 In a dissent urging a stiffer penalty on a malfeasant lawyer, the following passage was quoted to illustrate the importance of holding clients' funds in the practice of law: "Like many rules governing the behavior of lawyers, [the rule governing client funds] has its roots in the confidence and trust which clients place in their attorneys. Having sought his advice and relying on his expertise, the client entrusts the lawyer with the transaction including the handling of the client's funds. Whether it be a real estate closing, the establishment of a trust, the purchase of a business, the investment of funds, the receipt of proceeds of litigation, or any one of a multitude of other situations, it is commonplace that the work of lawyers involves possession of their clients' funds. That possession is sometimes expedient, occasionally simply customary, but usually essential. Whatever the need may be for the lawyer's handling of clients' money, the client permits it because he trusts the lawyer." Matter of Driscoll, 575 N.E.2d 46, 51-52 (Mass. ______________________ 1991)(Greaney, J., dissenting) (quoting Matter of Wilson, 81 ________________ N.J. 451, 454, 409 A.2d 1153 (1979)). -35- Therefore, the IOLTA Rule effectively coerces clients' compliance through the practices of their lawyers. Even if clients were informed of the IOLTA Rule and offered a choice, we will assume, again for the limited purposes of reviewing dismissal of this case, that there are circumstances in which the use of IOLTA accounts is necessary for legal representation and therefore, that clients would at times be compelled to allow their funds to be deposited in IOLTA accounts. 2. Does the IOLTA Rule Compel Speech by the ________________________________________ Plaintiffs? ___________ The client-plaintiffs allege that "the collection and use of interest, under color of state law, generated from the IOLTA trust accounts ..., especially for litigation that involves political or ideological causes, and for legislative or other forms of lobbying, deprive [plaintiffs] of [their] right to freedom of speech and association." The lawyer- plaintiffs allege that forcing them to comply with the IOLTA Rule requires them to choose between serious curtailment of their practice of law or "associating with organizations whose actions offend [their] political and ideological beliefs" depriving them of their right to freedom of speech and association. The plaintiffs rely on the compulsory union fees and bar association dues cases for support. They argue that they are required to finance IOLTA program recipient -36- and bar association members have been compelled to support organizations in the same way that dissenting union members unconstitutional. In Abood, 431 U.S. 209, Detroit school _____ fees and dues which the Supreme Court has found to be political and ideological causes through the collection of teachers challenged an "agency-shop" clause in their U.S. at 7-9. -37- compelled union membership and compelled financial support of distinguished, for First Amendment purposes, between unions. Abood, 431 U.S. at 217, n.10; see also Keller, 496 _____ ___ ____ ______ claiming that it violated their First Amendment rights.14 union's collective bargaining efforts to avoid allowing non- join the representative union to pay dues to support the members to benefit from collective bargaining, as "free- The agency-shop clause required employees who chose not to compel employees financially to support their collective- riders", without paying. The Supreme Court found that "[t]o collective-bargaining agreement with the school board bargaining representative [had] an impact on their First 14 An "agency-shop" does not require union membership of all unions could not use the dues of dissenters for political or 235-36. bargaining purpose of the agency-shop requirement. Id. at ___ ideological causes that were not germane to the collective- ____________________ Amendment interests." Id. at 222. The Court held that ___ employees while a "union-shop" does. The Court has not In the context of bar association dues, the Court similarly found that compelled dues of members of a unified bar association could not be used to finance activities which were not germane to administrative purposes of the bar association. Keller, 496 U.S. at 14; see also Schneider v. ______ ___ ____ _________ Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1st Cir. ____________________________________ 1990). The union fees and bar association dues cases do not support the plaintiffs' cause nor do other cases which have considered the First Amendment implications of compelled contribution to organizations.15 These cases show that compelled speech, through compelled financial support, arises from the dissenters' involuntary association with ideology or political activities. To affect First Amendment rights, there must be a connection between dissenters and the ____________________ 15 See, e.g., Hays County Guardian v. Supple, 969 F.2d 111, ___ ____ ____________________ ______ 122-24 (5th Cir. 1992) (compulsory student fees used to support university newspaper); cert. denied, 113 S. Ct. 1067 _____ ______ (1993); Carroll v. Blinken, 957 F.2d 991 (2d Cir.) _______ _______ (compulsory student fees used to support NYPIRG, statewide student advocacy organization), cert. denied, 113 S. Ct. 300 _____ ______ (1992); United States v. Frame, 885 F.2d 1119 (3d Cir. 1989) _____________ _____ (fee imposed on cattle producers and importers by federal statute used to fund national beef campaign by remitting funds to recipient organizations); cert. denied, 493 U.S. _____ ______ 1094 (1990): Galda v. Rutgers, 772 F.2d 1060 (3d Cir. 1985) _____ _______ (compulsory student fee used to support NJPIRG); cert. _____ denied, 475 U.S. 1082 (1986); Smith v. Regents of the Univ. ______ _____ _____________________ of Calif., 844 P.2d 500 (Cal. 1993) (compulsory student fees _________ used to support a wide range of student organizations and activities); Cahill v. Public Service Comm'n, 556 N.E. 2d 133 ______ _____________________ (N.Y. 1990) (utilities authorized by N.Y. Public Service Commission to pass along to ratepayers cost of charitable contributions). -38- organization so that dissenters reasonably understand that they are supporting the message propagated by recipient organizations. Typically, compelled contribution of money to support political or ideological causes is the root of the evil which offends the First Amendment: "'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical.'" Abood, 431 U.S. at 234-35 n.31 (quoting I. Brant, James _____ Madison: The Nationalist 354 (1948)). In this case, the plaintiffs' allegations that "[t]he collection of and use of interest, under color of state law, generated by funds in IOLTA trust accounts" violate their rights to freedom of speech and association do not state a claim of compelled financial support. The interest generated by funds deposited in IOLTA accounts is not the clients' money. The process by which the IOLTA program collects and uses the accrued interest does not affect the plaintiffs' funds held in IOLTA accounts nor does it require any other expenditures or efforts by the plaintiffs.16 Put simply, the plaintiffs have not been compelled by the IOLTA Rule to contribute their money to the IOLTA program. Rather, the IOLTA program ____________________ 16 We note that the plaintiff-lawyers are required by the IOLTA Rule to set up IOLTA accounts in banks and deposit appropriate client funds therein. Because a comparable effort would be necessary to set up non-interest bearing accounts for the deposit of client funds, we find it inconsequential for First Amendment analysis. -39- recipient organizations benefit from an anomaly created by the practicalities of accounting, banking practices, and the ethical obligation of lawyers. The interest earned on IOLTA accounts belongs to no one, but has been assigned, by the Massachusetts Supreme Judicial Court, to be used by the IOLTA program. Therefore, the collection and use of the interest by the IOLTA program does not constitute financial support by the plaintiffs, as they claim. If the plaintiffs believe that the IOLTA program is not operated in accord with its stated purpose or if they remain dissatisfied with the assigned recipients of IOLTA funds, they may address their complaints to the IOLTA Committee or the Massachusetts Supreme Judicial Court. The plaintiffs have not alleged and there are no other facts or circumstances which establish that they have been compelled to associate with or support the IOLTA program in any other manner. They have not been compelled by the IOLTA Rule to join, affirm, support or subsidize ideological expression of IOLTA recipient organizations in any way.17 ____________________ 17 Although the plaintiffs have alleged deprivation of their right to freedom of association, we have found no factual allegations to support their claim. The IOLTA Rule does not require that clients or lawyers join any organization. The plaintiffs have not alleged that the organizations which ultimately receive IOLTA funding automatically include them as members or otherwise link them to the organizations without their consent. C.f. Carroll, 957 F.2d at 1003 ____ _______ (holding that SUNY Albany's distribution of student fees to NYPIRG which automatically made all students members, impermissibly forced association in violation of the First -40- Because the plaintiffs have not adequately alleged that the IOLTA Rule compels a connection between them and the IOLTA recipient organizations, we find that the IOLTA Rule does not burden the plaintiffs' First Amendment rights. Having found no impact on the plaintiffs' First Amendment rights caused by the IOLTA Rule, we need not consider whether the IOLTA program serves a compelling state interest. The district court's order dismissing the plaintiffs' claims is Affirmed. Affirmed. _________ ____________________ Amendment). -41-